Received Electronically
April 21, 2020

United States Court of Appeals
For the First Circuit

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | |
|---|---|
| FORE RIVER RESIDENTS AGAINST THE COMPRESSOR STATION, CITY OF QUINCY, MA, WEYMOUTH COUNCILOR REBECCA HAUGH, MICHAEL H. HAYDEN AND FOOD & WATER WATCH, <br>     Petitioners, <br><br> v. <br><br> FEDERAL ENERGY REGULATORY COMMISSION <br>     Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PETITION FOR REVIEW**

**22-1146**

NOW COME the petitioners, Fore River Residents Against the Compressor

Station, City of Quincy, Massachusetts, Weymouth Councilor Rebecca Haugh,

Michael H. Hayden and Food & Water Watch (hereinafter the "Petitioners"), and

hereby respectfully petition this Honorable Court for review of the Order Denying

Rehearing ("FERC Order") issued by the Federal Energy Regulatory Commission

("FERC" or "the Commission") on February 21, 2020, FERC Docket No. CP16-9-

000, 170 FERC ¶61,144 and the Commission's Approval for Extension of Time to

Complete Project, CP16-9-000 issued by FERC's Office of Energy Products,

Division of Pipeline Certificates, Chief, Certificate Branch 1, on December 26, 2018 ("FERC's Extension Approval").[1]

On October 22, 2015, the Applicant, Algonquin Gas Transmission LLC ("Applicant" or "Algonquin") filed an application for the construction and operation of the Atlantic Bridge Project, which includes construction of a new 7,700 horsepower (hp) natural gas-fired compressor station ("the proposed compressor station") at 6 & 50 Bridge Street, Weymouth, Norfolk County, Massachusetts. Construction of interstate natural gas facilities is regulated by the Commission as set forth under the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(c). The Petitioners intervened in the FERC proceeding below. See 158 FERC ¶61,061, ¶ 14 and Appendix A (granting timely, unopposed motions to intervene). On January 25, 2017, the Commission released an Order Issuing Certificate and Authorizing Abandonment, FERC Docket No. CP16-9-000 ("the Certificate Order").

Judicial review under the NGA is governed by 15 U.S.C. § 717r(d)(1), stating:

> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any civil action for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit, license, concurrence, or approval (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.).

---

[1] (FERC Order and FERC's Extension Approval, attached hereto as Exhibits A and B, respectively).

15 U.S.C. § 717r(d)(1).

As required by 15 U.S.C. § 717r(a), the Petitioners filed a timely Request for Rehearing of Approval For Extension of Time to Complete Project on January 25, 2019 (attached hereto as Exhibit C). Following a Stay issued by the Commission, the FERC Order denied said Request for Rehearing, albeit with a nine paragraph dissent from Commissioner Glick. This dissent (footnotes omitted) states as follows:

GLICK, Commissioner, *dissenting*:

1. On December 26, 2018, the Commission's staff extended by two years the deadline to complete construction of the Atlantic Bridge pipeline just hours after the project's developer—Algonquin Gas Transmission, LLC (Algonquin)—asked for the additional time. I dissent from today's order denying rehearing of Commission staff's action because, in my opinion, such a significant modification of a condition in a natural gas pipeline certificate requires consideration and action by the Commission as a whole, not Commission staff on its own. This proceeding presents important issues and the parties deserve better than a cursory response from Commission Staff.

2. The relevant facts are straightforward. On January 25, 2017, the Commission issued a certificate of public convenience and necessity under Natural Gas Act (NGA) section 7 for the Atlantic Bridge pipeline. The certificate required that the project be completed and put into service within two years—*i.e.*, by January 25, 2019. In addition, the certificate required the developers to secure the necessary federal approvals prior to beginning any construction. Before long, it became clear that those approvals would not be immediately forthcoming and that the project would not be finished as originally anticipated. Although the parties disagree vehemently over who bears responsibility for that delay, the fact of the delay is all that matters for these purposes. On the day after Christmas—December 26, 2018—a month before the deadline to complete construction, Algonquin submitted a request for a two-year extension of that deadline. As noted above, Commission staff

3

granted the request a few hours later, just minutes after it appeared on the docket.

3.  Whether to modify a significant deadline imposed by a section 7 certificate is an important issue that should be resolved by the Commission acting as a whole, not Commission staff acting through its delegated authority.  For one thing, a deadline to complete construction helps to limit the disruption caused by constructing a new pipeline by ensuring that any disruption occurs within a discrete timeframe and that construction is not prolonged for years into the future.  In addition, a deadline to complete construction helps to ensure that the Commission does not award certificates to speculative projects or projects that cannot or will not be timely completed.  Finally, as today's order explains, a deadline for completing construction "diminish[es] the potential that the public interest might be compromised by significant changes occurring between issuance of the certificate and commencement of the project."  In short, deadlines to complete construction are an important tool for the Commission to use in ensuring that an interstate natural gas pipeline is developed in a manner that is consistent with the public interest.

4.  In some cases, there may be a good reason for a delay in a new pipeline's construction schedule and, in those instances, it may be consistent with the public interest to extend the relevant deadline.  But whether good cause exists and whether an extension is consistent with the public interest is an important question that each Commissioner should decide for themselves. After all, it is the Commissioners that are nominated by the President and confirmed by the Senate to make the decisions entrusted to the Commission pursuant to our various statutory authorities.

5.  That is especially true here, where the Commission was on notice that any extension in this proceeding was likely to be disputed.  A proceeding in which the relevant law and facts are subject to significant disagreement is likely to raise important questions that deserve the Commissioners' attention and demand a reasoned response from the Commission as a whole.  Under those circumstances, Commission staff's exercise of delegated authority will rarely, if ever, constitute an adequate response.

6.  Although my concerns would apply to any exercise of delegated authority under these circumstances, I am particularly troubled by the facts before us here.  As explained above, the extension request was approved the same morning it came in and only minutes after it was published on the docket.

That means that the parties who opposed the extension had no opportunity whatsoever to be heard before it was granted.  Moreover, I do not see how, on the record before us, a few hours was anywhere near enough time to meaningfully evaluate whether good cause existed to extend the deadline, much less to render the type of reasoned decision that the Administrative Procedure Act requires.

7.  Actions like these only lend further credence to those who view the Commission as a rubber stamp in pipeline proceedings.  We can and must do better.  The process of producing an order that is voted on by the full Commission may not be perfect—and the Commissioners may not always agree—but that process will almost certainly deliver more reasoned and considered decisionmaking than the parties received here.

8.  The Commission responds to my concerns by asserting that it "generally acts" on contested requests for an extension of time and proposing a new policy for noticing and responding to extension requests.  That assertion is more than a little sanctimonious coming in a proceeding where the requested extension was granted less than an hour after it appeared on the docket, well before any party had an opportunity to object.

9.  Nevertheless, I recognize that the new policy is a step in the right direction and, insofar as it represents progress, I support it.  But it cannot cure the error that already took place in this proceeding.  In any case, because I believe that these extension requests represent important questions, I would prefer not to truncate parties' opportunity to be heard by prohibiting reply comments and answers.  In addition, although I agree that extension requests should not be a forum to re-litigate the underlying certificate, parties must have the right to argue that developments since the issuance of the certificate have called into question the Commission's finding of public convenience and necessity.  That said, I will keep an open mind in evaluating how this policy plays out and whether it provides parties with adequate process for addressing extension requests.

For these reasons, I respectfully dissent.

[FERC Order, Com. Glick, *dissenting* (footnotes omitted)].  The Petitioners request review of the FERC Order and FERC's Extension Approval.  The Petitioners further request that the FERC Order and FERC's Extension Approval be reversed such that

the Commission's two-year extension of the January 25, 2019 deadline to complete

construction of the proposed compressor station is vacated and construction be

suspended until further appropriate review is completed. Pursuant to 15 U.S.C. §

717r, this Petition for Review is timely filed within 60 days of the FERC Order. This

court has jurisdiction to review the FERC Order pursuant to 15 U.S.C. § 717r.

Respectfully submitted,

FORE RIVER RESIDENTS AGAINST THE
COMPRESSOR STATION, CITY OF QUINCY,
MA, WEYMOUTH COUNCILOR REBECCA
HAUGH and MICHAEL H. HAYDEN,
By Their Attorney,

/s/ *Michael H. Hayden*
Michael H. Hayden
Court of Appeals No.: 1139860
Massachusetts Bar No.: 660746
mhayden@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax:    617-342-4860

FOOD & WATER WATCH,
By Their Attorney,

/s/ *Adam Carlesco*
Adam Carlesco
D.C. Court of Appeals No.: 1601151
Food & Water Watch
1616 P Street NW, Suite 300
Washington, DC 20036
Phone: 202-683-4295
Dated:  April 21, 2020          acarlesco@fwwatch.com

6

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

|  |  |
|---|---|
| FORE RIVER RESIDENTS AGAINST THE COMPRESSOR STATION, CITY OF QUINCY, MA, WEYMOUTH COUNCILOR REBECCA HAUGH, MICHAEL H. HAYDEN AND FOOD & WATER WATCH,<br>　　　Petitioners,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION<br>　　　Respondent. | **RULE 26.1 CORPORATE DISCLOSURE** |

Pursuant to Federal Rule of Appellate Procedure 26.1, the Petitioners in the above captioned case submit the following Corporate Disclosure Statement.

Fore River Residents Against the Compressor Station (FRRACS) is a not-for-profit organization founded in 2015.  FRRACS is a community-based group for residents of Weymouth, Quincy, and Braintree, Massachusetts, engaged in regulatory advocacy on behalf of its community members in connection with natural gas proposals in the Fore River Basin, including the construction and operation of the Weymouth natural gas compressor station.  FRRACS has no parent companies, and there are no publicly held corporations that have a ten-percent or greater ownership interest in FRRACS.

Food & Water Watch is a not-for-profit organization founded in 2005 to ensure access to clean drinking water, safe and sustainable food, and a habitable climate system.  Food & Water Watch has no parent companies, and there are no publicly held corporations that have a ten-percent or greater ownership interest in Food & Water Watch.

FORE RIVER RESIDENTS AGAINST THE COMPRESSOR STATION, CITY OF QUINCY, MA, WEYMOUTH COUNCILOR REBECCA HAUGH and MICHAEL H. HAYDEN,
By Their Attorney,

/s/ *Michael H. Hayden*
Michael H. Hayden
Court of Appeals No.:  1139860
Massachusetts Bar No.:  660746
mhayden@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone:        617-439-7500
Fax:   617-342-4860

FOOD & WATER WATCH,
By Their Attorney,

/s/ *Adam Carlesco*
Adam Carlesco
D.C. Court of Appeals No.:  1601151
Food & Water Watch
1616 P Street NW, Suite 300
Washington, DC 20036
Phone:  202-683-4295
acarlesco@fwwatch.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 21, 2020, these document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the parties/counsel listed below.  I further certify that, on April 21, 2020, the foregoing documents were filed electronically with FERC and shall be served electronically upon each person designated on the official Service List for the docket number of the FERC proceeding as compiled by the Secretary to the Commission, a copy of which is attached hereto.

Federal Energy Regulatory Commission
Attn:  Kimberly D. Bose, Secretary
888 First Street, NE
Washington, DC 20426

/s/ *Michael H. Hayden*
Michael H. Hayden

USCA Case #22-1146        Document #1953371        Filed: 06/30/2022        Page 10 of 67

  **FERC** Online – Web Applications of the Federal Energy Regulatory Commission

www.ferc.gov

| | |
|---|---|
| **FERC Online Home** | **Service List for CP16-9-000 Algonquin Gas Transmission, LLC** |
| **About FERC Online** | Contacts marked ** must be postal served |

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Sandra Peters | Sandra Peters<br>57 WEYBOSSET STREET<br>NORTH WEYMOUTH, MASSACHUSETTS 02191<br>UNITED STATES<br>sunandsand222@yahoo.com | |
| Rebecca Haugh | Rebecca Haugh<br>District 1 Town Councilor<br>34 Evans Street<br>Weymouth, MASSACHUSETTS 02191<br>UNITED STATES<br>rebecca.a.haugh@gmail.com | |
| Michael Hayden | Michael Hayden<br>Attorney<br>Morrison Mahoney LLP<br>250 Summer Street<br>Boston, MASSACHUSETTS 02210<br>UNITED STATES<br>mhayden@morrisonmahoney.com | |
| Michael Hayden | Lori Hayden<br>Mrs. Lori Hayden, Esq.<br>10 Prescott Terrace<br>Quincy, MASSACHUSETTS 02169<br>UNITED STATES<br>lorihayden@gmail.com | |
| Sue Carrillo | Sue Carrillo<br>Consultant<br>PO Box 56122<br>Washington, DISTRICT OF COLUMBIA 20040<br>UNITED STATES<br>knowledgeinexhaustibleelectorate@yahoo.com | |
| Michael Hayden | Michael Hayden<br>Attorney<br>Morrison Mahoney LLP<br>250 Summer Street<br>Boston, MASSACHUSETTS 02210<br>UNITED STATES<br>mhayden@morrisonmahoney.com | |
| Michael Hayden | Lori Hayden<br>Mrs. Lori Hayden, Esq.<br>10 Prescott Terrace<br>Quincy, MASSACHUSETTS 02169<br>UNITED STATES<br>lorihayden@gmail.com | |
| Michael Hayden | Michael Hayden<br>Attorney<br>Morrison Mahoney LLP<br>250 Summer Street<br>Boston, MASSACHUSETTS 02210<br>UNITED STATES<br>mhayden@morrisonmahoney.com | |
| Michael Hayden | Lori Hayden<br>Mrs. Lori Hayden, Esq.<br>10 Prescott Terrace | |

Sidebar navigation:
Log Out
Edit Registration
**Company Registration**
eFiling
eSubscription
eComment
Query Mailing List/Recipients by State
Query Service List
My Service List
My Filing List
eLibrary
**eTariff Viewer**
**Help**

|  | Quincy, MASSACHUSETTS 02169 UNITED STATES lorihayden@gmail.com | |
|---|---|---|
| Robert Wells | Robert Wells 112 Academy Avenue Weymouth, MASSACHUSETTS 02188 UNITED STATES rwepsec@gmail.com | |
| Yvonne Lamothe | Yvonne Lamothe Yvonne Lamothe 25 Jordan Street Quincy, MASSACHUSETTS 02170 UNITED STATES yvonne@rockislandcovearts.com | |
| Gary Peters | Gary Peters Mr. Gary Peters BS,REHS,RS,INC 34 Bluff Road Weymouth, MASSACHUSETTS 02191 UNITED STATES gpoptical@hotmail.com | |
| Algonquin Gas Transmission, LLC | Berk Donaldson Director, Rates & Certificates Enbridge Inc. 5400 Westheimer Ct. Suite WO 6N-63 Houston, TEXAS 77056 UNITED STATES Berk.Donaldson@enbridge.com | Chris Harvey Manager 5400 WESTHEIMER COURT Office 6O61 Houston, TEXAS 77056-531 Christopher.Harvey@Enbridge.com |
| Algonquin Gas Transmission, LLC | | Austin Isensee Certificate Analyst Spectra Energy Corp 5400 Westheimer Ct. Houston, TX, TEXAS 77056-5310 acisensee@spectraenergy.com |
| Algonquin Gas Transmission, LLC | Steven Hellman Associate General Counsel Algonquin Gas Transmission Company 5400 Westheimer Ct. Houston, TEXAS 77056-5310 UNITED STATES sehellman@spectraenergy.com | brian keegan 43 anna rd weymouth, MASSACHUSETTS 02191 keeganbe57@gmail.com |
| Algonquin Tinker Gen Co. | Wendy Warren Wright & Talisman, PC 1200 G Street, N.W. Suite 600 Washington, DISTRICT OF COLUMBIA 20005 UNITED STATES warren@wrightlaw.com | |
| Algonquin Tinker Gen Co. | Victoria Lauterbach Shareholder Wright & Talisman, P.C. 1200 G Street NW Ste 600 Washington, DISTRICT OF COLUMBIA 20005 UNITED STATES lauterbach@wrightlaw.com | |
| Almar LLC | Philip Simpson Robinson Brog 875 Third Avenue -- Ninth Floor New York, NEW YORK 10022 UNITED STATES pts@robinsonbrog.com | |
| Calpine Energy Services, L.P. | | Jay Dibble Director - Regulatory INDIVIDUAL 717 Texas Avenue |

USCA Case #22-1146     Document #1953371     Filed: 06/30/2022     Page 12 of 67

| | |
|---|---|
| | Suite 1000<br>Houston, TEXAS 77002<br>Jay.Dibble@Calpine.com |
| Calpine Energy Services, L.P. | Sarah G. Novosel, ESQ<br>Senior VP and Managing Counsel<br>Calpine Corporation<br>805 15th Street, NW<br>Suite 708<br>Washington, DISTRICT OF COLUMBIA 20005<br>snovosel@calpine.com |
| Calpine Energy Services, L.P. | Krystin M Chandler<br>Government Relations Analyst<br>Calpine<br>717 Texas Street #1000<br>Houston, TEXAS 77002<br>Krystin.Chandler@calpine.com |
| Calpine Energy Services, L.P. | Paul F Forshay<br>Attorney<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>PaulForshay@eversheds-sutherland.com |
| Consolidated Edison Company of New York, Inc. and Orange and Rockland Utilities, Inc. | Paul Savage<br>Consolidated Edison Development, Inc.<br>4 Irving Place, room 1875-s<br>New York, NEW YORK 10003<br>UNITED STATES<br>savagep@coned.com |
| Eversource Energy Service Company | Andrew Katz<br>Senior Counsel<br>Northeast Utilities Service Company<br>901 F Street<br>Suite 602<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>katzas@nu.com |
| Exelon Corporation | Christopher Wilson<br>Director, Federal Regulatory A<br>Exelon Corporation<br>101 Constitution Ave, NW<br>Suite 400E<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>FERCe-filings@exeloncorp.com | Lisa Michelle Simpkins<br>Environmental and Fuels Policy<br>Exelon Corporation<br>100 Constellation Way<br>Suite 600C<br>Baltimore, MARYLAND 21202<br>lisa.simpkins@exeloncorp.com |
| Food & Water Watch | Karina Wilkinson<br>100 Lawrence Ave<br>Highland Park, NEW JERSEY 08904<br>UNITED STATES<br>kwilkinson@fwwlocal.org |
| GDF Suez Gas NA LLC | Jason Austin<br>VP & General Counsel<br>GDF Suez Gas NA LLC<br>1990 Post Oak Blvd<br>Suite 1900<br>Houston, TEXAS 77056<br>UNITED STATES<br>jason.austin@na.engie.com |
| Liberty Utilities (Pipeline & Transmission) Corp. | Victoria Lauterbach<br>Shareholder<br>Wright & Talisman, P.C.<br>1200 G Street NW Ste 600<br>Washington, DISTRICT OF COLUMBIA 20005 |

| | | |
|---|---|---|
| | UNITED STATES<br>lauterbach@wrightlaw.com | |
| Liberty Utilities (Pipeline & Transmission) Corp. | Wendy Warren<br>Wright & Talisman, PC<br>1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>warren@wrightlaw.com | |
| Maine Natural Gas Corporation | Elizabeth Whittle<br>Partner<br>Nixon Peabody LLP<br>401 Ninth Street, N.W<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ewhittle@nixonpeabody.com | Linda Dent<br>89 East Avenue<br>Rochester, NEW YORK 14649<br>Linda_dent@rge.com |
| Maritimes & Northeast Pipeline, L.L.C. | Steven Hellman<br>Associate General Counsel<br>Algonquin Gas Transmission Company<br>5400 Westheimer Ct.<br>Houston, TEXAS 77056-5310<br>UNITED STATES<br>sehellman@spectraenergy.com | |
| Massachusetts Energy Facilities Siting Board | Robert Shea<br>Presiding Officer<br>Commonwealth of Massachusetts Energy Facilities Siting Board<br>One South Station<br>Boston, MASSACHUSETTS 02110<br>UNITED STATES<br>Robert.J.Shea@state.ma.us | |
| Mobil Natural Gas Inc. | | Randy E Parker<br>ExxonMobil Gas & Power Marketing Company<br>2277 Springwoods Village Parkway<br>Spring, TEXAS 77389<br>randy.e.parker@exxonmobil.com |
| Mobil Natural Gas Inc. | Kevin Sweeney<br>John & Hengerer<br>1625 K Street, NW<br>Suite 1100<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>ksweeney@kmsenergylaw.com | Sommer Louie<br>Exxon Mobil Corporation<br>22777 Springwoods Village Parkway<br>Spring, TEXAS 77389<br>sommer.n.louie@exxonmobil.com |
| National Grid Gas Delivery Companies | Kenneth Maloney<br>Attorney<br>KeySpan Energy Delivery Companies, The Cullen and Dykman LLP<br>1101 14th ST., NW, Suite 750<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>kmaloney@cullenanddykman.com | Samara A Jaffe<br>Program Manager<br>100 East Old Country Rd<br>Hicksville, NEW YORK 11021<br>samara.jaffe@nationalgrid.com |
| National Grid Gas Delivery Companies | | Patrick J. Tarmey<br>Senior Counsel, FERC Regulator<br>National Grid<br>40 Sylvan Rd.<br>Waltham, MASSACHUSETTS 02451<br>patrick.tarmey@nationalgrid.com |
| National Grid Gas Delivery Companies | | John E Allocca<br>john.allocca@us.ngrid.com |
| New England | | John Rudiak |

| | | |
|---|---|---|
| New England Local Distribution Companies | Local Distribution Companies | Director-Energy Services Energy Services PO Box 1500 Hartford, 06144-1500 jrudiak@ctgcorp.com |
| New England Local Distribution Companies | | Deepak A Raval Federal Energy Specialist NiSource Corporate Services Co. 290 W Nationwide Bolvd Columbus, OHIO 43215 draval@nisource.com |
| New England Local Distribution Companies | | Francisco C DaFonte Director, Energy Procurememt Liberty Utilities (New England Natural Gas) Corp 11 Northeastern Blvd Salem, NEW HAMPSHIRE 03079 chico.dafonte@libertyutilities.com |
| New England Local Distribution Companies | | Andrew S Katz Senior Counsel Northeast Utilities 901 F Street, N.W. Suite 602 Washington, DISTRICT OF COLUMBIA 20004 andrew.katz@eversource.com |
| New England Local Distribution Companies | | John P Gregg, ESQ Managing Partner McCarter & English LLP 1301 K St., N.W. Suite 1000 West Washington, DISTRICT OF COLUMBIA 20005 jgregg@mccarter.com |
| New England NG Supply, Ltd. | Randall Rich Partner Pierce Atwood LLP Pierce Atwood LLP 1875 K Street, NW Washington, DISTRICT OF COLUMBIA 20006 UNITED STATES rrich@pierceatwood.com | |
| New Jersey Natural Gas Company | William Scharfenberg Attorney NJR Service Corporation PO Box 1415 Wall,NEW JERSEY 07719 UNITED STATES wscharfenberg@njresources.com | Doug Rudd Gas Analyst New Jersey Natural Gas Company PO Box 1415 Wall,NEW JERSEY 07719 dcrudd@njresources.com |
| New York Attorney General | Philip Bein Assistant Attorney General New York State Attorney General's Office The Capitol Albany, NEW YORK 12224 UNITED STATES philip.bein@ag.ny.gov | |
| New York State Department of Environmental Conservation | Sita Crounse Senior Attorney NYS Department of Environmental Conservation 625 Broadway ALBANY, NEW YORK 12233-1500 UNITED STATES sita.crounse@dec.ny.gov | |
| New York State Electric & Gas | Elizabeth Whittle Partner | Linda Dent 89 East Avenue |

USCA Case #22-1146     Document #1953371     Filed: 06/30/2022     Page 15 of 67

| | | |
|---|---|---|
| Corporation | Nixon Peabody LLP<br>401 Ninth Street, N.W<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>ewhittle@nixonpeabody.com | Rochester, NEW YORK 14649<br>Linda_dent@rge.com |
| NJR Energy Services Company | William Scharfenberg<br>Attorney<br>NJR Service Corporation<br>PO Box 1415<br>Wall, NEW JERSEY 07719<br>UNITED STATES<br>wscharfenberg@njresources.com | Ginger Richman<br>Director<br>NJR ENERGY SERVICES COMPANY<br>PO Box 1415<br>Wall, NEW JERSEY 07719<br>UNITED STATES<br>gprichman@njresources.com |
| Pipe Line Awareness Network for the Northeast, Inc. | Kathryn Eiseman<br>17 Packard Rd<br>Cummington, MASSACHUSETTS 01026<br>UNITED STATES<br>katyeiseman@gmail.com | |
| Portland Natural Gas Transmission System | Eva Neufeld<br>Associat General Counsel<br>TransCanada Corporation<br>717 Texas St, Ste 2400<br>Houston, TEXAS 77002<br>UNITED STATES<br>eva_neufeld@transcanada.com | |
| PSEG Energy Resources & Trade LLC | Cara Lewis<br>Assistant Regulatory Counsel<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>UNITED STATES<br>cara.lewis@pseg.com | |
| Repsol Energy North America Corporation | | Thomas J. Eastment<br>Attorney<br>Baker Botts LLP<br>700 K Street, NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>tom.eastment@bakerbotts.com |
| Repsol Energy North America Corporation | | Xochitl M. Perales<br>Legal Counsel<br>Repsol Energy North America Corporation<br>2001 Timberloch Place<br>Suite 3000<br>The Woodlands, TEXAS 77380<br>xperalesm@repsol.com |
| Riverkeeper, Inc. | | Jennifer McCave<br>Riverkeeper, Inc.<br>Riverkeeper, Inc.<br>20 Secor Road<br>Ossining, NEW YORK 10950<br>jmccave@riverkeeper.org |
| Stop the Algonquin Pipeline Expansion | Susan Van Dolsen<br>29 Highland Rd.<br>Rye, NEW YORK 10580<br>UNITED STATES<br>svandolsen@gmail.com | |
| Tenaska Marketing Ventures | Tomasz Lange<br>Tenaska Marketing Ventures<br>14302 FNB Parkway<br>Omaha, NEBRASKA 68154<br>UNITED STATES<br>tlange@tenaska.com | Terry Jo Comes<br>Regulatory Projects Manager<br>Tenaska Marketing Ventures<br>14302 FNB Parkway<br>Omaha, NEBRASKA 68154-5212<br>UNITED STATES<br>tcomes@tenaska.com |
| WEYMOUTH, MASSACHUSETTS, | Ivria Fried<br>40 Grove Street | |

TOWN OF
Suite 190
Wellesley, MASSACHUSETTS 02482
UNITED STATES
ifried@miyares-harrington.com

Back to Query Service List     Back to FERCOnline

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676.
Please include a current mail address, telephone number, and e-mail address.

# EXHIBIT A

170 FERC ¶ 61,144
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Neil Chatterjee, Chairman;
                        Richard Glick and Bernard L. McNamee.

Algonquin Gas Transmission, LLC                    Docket No. CP16-9-009

ORDER DENYING REHEARING

(Issued February 21, 2020)

1.      On December 26, 2018, Commission staff issued a letter order granting Algonquin Gas Transmission, LLC (Algonquin) a two year extension of time to complete construction of the Atlantic Bridge Project.[1]  The Town of Weymouth, Massachusetts (Weymouth), and the Fore River Residents Against the Compressor Station, City of Quincy, Massachusetts, Weymouth Councilor Rebecca Haugh, Michael H. Hayden, and the Food and Water Watch (collectively, Petitioners) filed requests for rehearing of the December 26 Letter Order.  For the reasons discussed below, we deny rehearing.

I.      **Background**

2.      On January 25, 2017, the Commission issued an order authorizing Algonquin and Maritimes & Northeast Pipeline, LLC (Maritimes) to construct and operate the Atlantic Bridge Project, consisting of pipeline and compression facilities in New York, Connecticut, and Massachusetts.[2]  The Certificate Order required Algonquin to obtain a determination of consistency with the Coastal Zone Management Act from the Massachusetts Office of Coastal Zone Management prior to construction of a compressor station in the Town of Weymouth, Massachusetts (Weymouth Compressor Station).[3]  The

---

[1] Approval for Extension of Time to Complete Project, CP16-9-000 (Dec. 26, 2018) (December 26 Letter Order).

[2] *Algonquin Gas Transmission, LLC*, 158 FERC ¶ 61,061 (Certificate Order), *reh'g denied*, 161 FERC ¶ 61,255 (2017).

[3] Certificate Order, 158 FERC ¶ 61,061 at Appendix B, Environmental Condition 16.

Certificate Order also required Algonquin and Maritimes to complete construction of the authorized facilities and make them available for service within two years.[4]

3.      On December 26, 2018, Algonquin requested a two year extension of time to complete construction of the project facilities.  The same day, the Chief of Branch 1 of the Commission's Office of Energy Projects, Division of Pipeline Certificates (Certificates Branch Chief) granted the request.  The December 26 Letter Order explains that Algonquin experienced permitting delays for the construction of the Weymouth Compressor Station, but expected those permits to be issued by mid-2019,[5] and that the horizontal directional drill (HDD) of the Taconic Parkway in New York was ongoing and additional time was required to complete this construction.[6]

4.      On January 25, 2019, Weymouth and Petitioners each filed requests for rehearing of the December 26 Letter Order.  Petitioners argue that:  (1) the Certificate Branch Chief did not have authority to issue the extension of time; and (2) there was not sufficient time between the filing of the request and Commission staff's issuance for the request to have been properly considered.  Weymouth argues that:  (1) the Commission cannot presume that the project is in the public convenience and necessity beyond the timeframe specified in the Certificate Order; (2) the environmental analysis for the original certificate proceeding is time-specific and no longer valid for the extension; and (3) good cause does not exist to extend the in-service date.

## II.    **Procedural Issues**

5.      On February 15, 2019, Algonquin filed an answer to the requests for rehearing.  Although the Commission's rules do not permit answers to requests for rehearing,[7] this

---

[4] *Id*. at ordering para. (B)(1).  The dissent mistakenly states that "the certificate required the developers to secure the necessary federal and state approvals prior to beginning any construction."  Dissent at P 2.  The Certificate Order and Commission policy only require that a certificate holder have all necessary federal permits before it commences construction.  The Commission encourages project sponsors to cooperate with state and local agencies.

[5] On November 13, 2019, Algonquin filed with the Commission the Massachusetts Office of Coastal Zone Management's finding that the proposed natural gas compressor station in the Town of Weymouth is consistent with the Coastal Zone Management enforceable program policies.  November 13, 2019 filing at 4.

[6] December 26 Letter Order at 1.

[7] 18 C.F.R. § 385.213(a)(2) (2019).

provision may be waived for good cause.[8]  Good cause exists to do so in this instance because Algonquin's answer provides information that will assist in the decision-making process.

## III.    Discussion

### A.    Delegated Authority to Issue Extensions of Time

6.    Petitioners argue that neither the Certificate Order nor the Commission's regulations delegate authority to the Certificates Branch Chief to grant extensions of time to complete construction in contested proceedings.[9]  Petitioners assert that the regulation cited in the Certificate Order establishing the two-year deadline to complete construction does not contemplate an extension of time and that it requires a certificate holder to meet the order's deadline and inform the Commission within 10 days if it is unable to do so.[10]  Petitioners also note that the Commission's regulations state that a certificate is only effective so long as the applicant continues the operations authorized by the order issuing the certificate.[11]  Thus, Petitioners conclude that the Commission's regulations do not allow the issuance of an extension of time to complete construction of the project.

7.    The regulations cited by Petitioners describe the general conditions applicable to all certificates,[12] and among these conditions is the requirement to complete construction within the timeframe specified in the certificate.[13]  However, the Commission's regulations authorize the Director of the Office of Energy Projects (OEP Director) or the Director's designee[14] to grant extensions of time of certificate conditions.  Specifically, the Director (or designee) is authorized to take appropriate action on "applications for extensions of time … to perform … acts required at or within a specified time by any … certificate or order by the Commission."[15]  Moreover, the Commission's practice has

---

[8] 18 C.F.R. § 385.101(e) (2018).

[9] Petitioners' Request for Rehearing at 2.

[10] *Id*. at 4 (citing 18 C.F.R. § 157.20 (2019)).

[11] *Id*.

[12] 18 C.F.R. § 157.20 (2019).

[13] *Id.*

[14] 18 C.F.R. § 375.308 (2018).

[15] *Id.* § 375.308(w)(4).

long been for requests for extensions of time to complete construction of certificated facilities to be resolved by delegated orders.[16]

8.      Next, Petitioners contend that the Certificate Order does not provide for delegated authority to issue the extension of time.[17]  Petitioners state that the only delegated authority set forth in the Certificate Order allows the OEP Director to take steps to ensure the protection of environmental resources.[18]  Petitioners argue that the Commission's regulations only allow sub-delegation in instances where the Commission expressly permits it.[19]  Even if such delegated authority exists, Petitioners contend that the Commission's regulations do not contemplate the delegation of authority to issue extensions of time in contested proceedings.[20]

9.      Petitioners are correct that the Certificate Order delegates certain authorization to the OEP Director or his designee.[21]  However, any authority delegated through Commission orders is additive to the delegated authority enumerated in the Commission's regulations.  As explained above, the Commission's regulations delegate

---

[16] *See, e.g., Southern Natural Gas Company*, Docket No. CP00-231-000 (July 25, 2001) (delegated order) (Certificate Branch Chief granting extension of time to complete construction and place facilities into service); *Rockies Express Pipeline, L.L.C.*, Docket Nos. CP04-413-000, et al. (May 11, 2006) (delegated order) (same); *UGI LNG, Inc.*, Docket Nos. CP06-442-000, et al. (Apr. 17, 2009) (delegated order) (same); *Midwestern Gas Transmission Company*, Docket No. CP11-489-000 (July 18, 2012) (delegated order) (same); *Floridian Natural Gas Storage Company, LLC*, Docket No. CP08-13-000 (Aug. 11, 2014) (delegated order) (same); *D'Lo Gas Storage, LLC*, Docket Nos. CP12-39-000 and CP18-524-000 (Aug. 28, 2018) (delegated order) (same).

[17] Petitioners' Request for Rehearing at 4, 8.

[18] *Id*. at 4-5, 8 (citing Certificate Order, 158 FERC ¶ 61,061 at Appendix B). Petitioners also note that there are several other environmental conditions that also require applicants to submit information for approval by the Director of the Office of Energy Projects.  *Id*. at 9.

[19] *Id*. at 5-6 (citing 18 C.F.R. § 375.301(b) (2019)).

[20] *Id*. at 6.

[21] *Algonquin Gas Transmission, LLC*, 161 FERC ¶ 61,287, at P 17 (2017) (describing the breadth of the Commission's authority to delegate to its designated agents the authority to conduct actions appropriate to the Commission's functions through its orders and regulations).

the authority to take action on extensions of time to the OEP Director or designee.[22] While some delegations require the proceeding be uncontested,[23] the regulation concerning extensions of time contains no such qualification.[24]  Again, Commission practice demonstrates that the OEP Director or designee can issue extensions of time for projects that had contested certificate proceedings.[25]

10.    Last, Petitioners assert that even if the Commission's regulations allow the OEP Director or designee to issue extensions of time, there is no evidence that the OEP Director expressly delegated this function to the Certificates Branch Chief.[26]  Petitioners argue that *Rockies Express Pipeline, LLC* requires internal documentation of the sub-delegation as well as information concerning the level of review completed by the Certificate Branch Chief and other Commission staff.[27]  Petitioners further contend that where the Commission's regulations permit sub-delegation, this delegation must be to "the deputy of such official, the head of a division, or a comparable official as designated by the official to whom the direct delegation is made."[28]  Petitioners assert that the Certificates Branch Chief is not a "comparable official," and therefore had no authority to issue the extension of time.[29]

11.    Delegated authority may be further sub-delegated to designees of the delegee.[30] The Commission has previously clarified that it "delegates authority to its Directors with the understanding that the Director may further delegate such authority to a designee,"

---

[22] 18 C.F.R. § 375.308(w)(4) (2019).

[23] *Id.* § 375.308(w)(1) (authorizing the OEP Director to take action on "any notice to intervene … filed in an uncontested application for pipeline facilities.").

[24] *Id.* § 375.308(w)(4).

[25] *See, e.g., Sabal Trail Transmission, LLC*, Docket No. CP15-17-000 (Jan. 31, 2018) (delegated order); *Rockies Express Pipeline, L.L.C.*, Docket Nos. CP04-413-000, et al. (May 11, 2006) (delegated order).

[26] Petitioners' Request for Rehearing at 7.

[27] *Id.* (citing *Rockies Express Pipeline, LLC*, 128 FERC ¶ 61,045 (2009) (*Rockies Express*)).

[28] *Id*. at 9-10 (citing 18 C.F.R. § 375.301(b) (2019)).

[29] *Id*. at 10.

[30] 18 C.F.R. § 375.301(b) (2019).

and that "sub-delegations to Branch Chiefs and similar level officials are appropriate."[31] In the same order, the Commission clarified that this practice is "routine," "usual, and longstanding."[32] In accordance with the usual practice, the OEP Director designated the Certificates Branch Chief, who has direct knowledge of the project's status and therefore is a comparable official to a deputy or division head in this situation, to act on Algonquin's request for an extension of time.[33]

12.     We also disagree with Petitioners' assertion that *Rockies Express* requires internal documentation of the sub-delegation.[34] In that case, the Commission found that the OEP Director's delegation to the Branch Chief was "in accordance with usual and longstanding practice, and supported by internal documentation."[35] This statement does not suggest that internal documentation is required in order for a sub-delegation to be valid. On the contrary, in *Rockies Express*, the Commission stated that, "unless explicitly prohibited, a Director may further delegate authority delegated by order of the Commission…to Branch Chiefs and similar level officials."[36] Petitioners do not address this language, nor do they identify any Commission authority that would "explicitly

---

[31] *Rockies Express*, 128 FERC ¶ 61,045 at P 21; *see also Algonquin Gas Transmission, LLC*, 161 FERC ¶ 61,287 at PP 19-20 (affirming that sub-delegations to gas branch chiefs and similar level officials are appropriate); *East Tennessee Natural Gas Co.*, 106 FERC ¶ 61,159, at P 12 (2004) (rejecting argument that letter order authorizing pipeline to place facilities in service signed by the Director of the Division of Gas – Environment and Engineering was not valid because it was not actually signed by the Director of OEP).

[32] *Rockies Express*, 128 FERC ¶ 61,045 at PP 21, 22; *East Tennessee Natural Gas Co.*, 106 FERC ¶ 61,159 at P 12 (affirming Director of OEP's sub-delegation as "usual and longstanding" practice).

[33] *See* supra note 14. *See also Rockies Express*, 128 FERC ¶ 61,045 at P 23 ("[w]ith respect to clearances for environmental conditions and authorization to begin construction, the Chief of Gas Branch 2 who has direct responsibility for ensuring compliance with the conditions is appropriately situated to evaluate whether those conditions have been met, and therefore is a 'comparable official' to a deputy or division head in this situation, as required by section 375.301(b) of the Commission's regulations.").

[34] *See Algonquin Gas Transmission, LLC*, 161 FERC ¶ 61,287 at P 23 (rejecting same argument).

[35] *Rockies Express*, 128 FERC ¶ 61,045 at P 22.

[36] *Id.* PP 21, 23.

prohibit" a sub-delegation to the Certificates Branch Chief in this case. Further, there would be no purpose served by requiring documentation of a sub-delegation. If a Director is not satisfied with action taken under sub-delegated authority, the Director can rescind the action.

### B.    Public Convenience and Necessity and Environmental Review

13.    Weymouth asserts that the Commission's conclusions in the Certificate Order were based on market conditions and the impact of the project's construction on affected communities assuming a completion date in 2019.[37] Weymouth states that the Certificate Order includes completion deadlines because "information supporting its public convenience and necessity order goes stale with the passage of time" and the completion date provides a "reasonable period of time for the project sponsor to conclude any necessary marketing efforts, complete construction, and make the project available for service."[38] Thus, Weymouth concludes that the Commission must determine if the project would still be in the public convenience and necessity if construction is not completed until 2021.[39]

14.    Weymouth also asserts that the Commission's determination that the Atlantic Bridge Project is not likely to have significant adverse effects on the environment is time-specific and cannot form the justification for an extension of the in-service date.[40] Weymouth argues that if the extension is granted, the Commission's conclusion that the Atlantic Bridge Project's impact would be minimal would be based on an evaluation conducted, and circumstances that existed, in May of 2017, more than four years before the new in-service date.[41] Moreover, Weymouth avers that where new evidence demonstrates that the EA is based on outdated information, the extension of time request must be denied.[42] Weymouth contends that the finding of no significant impact was

---

[37] Weymouth Request for Rehearing at 16.

[38] *Id.* (citing *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165 (2016)).

[39] *Id.*

[40] *Id.* at 14.

[41] *Id.* at 15 (noting that December 26 Letter Order does not address how the prior Environmental Assessment would apply to the project's now-delayed in-service timeline).

[42] *Id.* at 14-15 (citing *Wyoming-California Pipeline Company*, 70 FERC ¶ 61,041 (1995) ("[t]he Commission did not expect or intend that the mitigation measures included in the original certificates would be adequate with respect to construction undertaken at

based on incorrect information—that coal ash at the Weymouth site did not need to be remediated and contamination would be dealt with in compliance with the Massachusetts Contingency Plan (MCP)—because Algonquin is refusing to comply with the MCP.[43] Weymouth argues that if contamination must be remediated, the EA must be revised and any conclusions based on the EA, revisited.[44]

15.     The Commission's regulations do not establish a general time period for the completion of construction of all authorized natural gas facilities.[45]  This is, at least in large part, because the prescribed time period to complete construction in individual certificates varies depending on the specific project.[46]  The Commission's certificate orders include completion deadlines, in part, because the information supporting our public convenience and necessity determinations can go stale with the passage of time.[47] But that is not the case here as explained below.  The purpose of establishing a deadline for the completion of construction is to "diminish[] the potential that the public interest might be compromised by significant changes occurring between issuance of the certificate and commencement of the project."[48]  However, construction deadlines may

---

some unspecified time in the future.  That was one reason for the certificate condition requiring construction to be completed within five years.")).

     [43] *Id.* at 15-16.  Weymouth contends that Algonquin and Maritimes have submitted to the Massachusetts Department of Environmental Protection a final version of the Permanent Solution with Conditions Statement that wrongly asserts that the arsenic at the Weymouth Compressor Station site was associated with "Historic Fill" in violation of the MCP.  *Id.* at 5-6.

     [44] *Id.* at 15-16.

     [45] 18 C.F.R. § 157.20(b) (2019) (requiring, among other things, that authorized construction be completed and made available for service within the period of time to be specified by the Commission in each order).

     [46] *See e.g. Mountain Valley Pipeline, LLC*, 161 FERC ¶ 61,043 (2017) (three year deadline to complete construction); *Trunkline Gas Co., LLC*, 153 FERC ¶ 61,300, at ordering para. (B)(1) (2015) (four years to complete pipeline project); *Cheniere Creole Trail Pipeline, L.P.*, 142 FERC ¶ 61,137, at ordering para. (B)(1) (2013) (two years to complete Phase 1 pipeline facilities and four years to complete Phase 2 pipeline facilities).

     [47] *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165 at P 8 (citing *Iroquois Gas Transmission System, L.P.*, 104 FERC ¶ 61,307, at P 14 (2003)).

     [48] *Altamont Gas Transmission Co.*, 75 FERC ¶ 61,348, at 62,103 (1996).

be extended for good cause.[49]  The completion date specified in a certificate order provides what the Commission believes—based on its assessment of circumstances relevant to the specific project—to be a reasonable period of time for the project sponsor to complete construction and make the project available for service.[50]  However, if a certificate holder files for an extension of time within a timeframe during which the environmental and other public interest findings underlying the Commission's authorization can be expected to remain valid (as is the case here), the Commission, or staff exercising delegated authority, generally will grant an extension of time if the movant demonstrates good cause.[51]

16.     Extending the two year deadline for the Atlantic Bridge Project to be constructed and placed into service will not undermine the Commission's findings in the Certificate Order that the project is required by the public convenience and necessity and is not a major federal action significantly affecting the quality of the human environment.  The completion date specified in the order is not intended to establish a limit for the period during which the environmental and other public interest findings are expected to remain valid.  The Commission has authorized infrastructure projects with initial in-service deadlines of four, five, or six years (comparable to the four-year period allowed here by the extension), where it found such timeframes appropriate.[52]  The Certificate Order found market need for the Atlantic Bridge Project based on 15 year long-term precedent agreements for 100% of the project's capacity.[53]  The term of these agreements extends many years beyond January 25, 2021, and Weymouth provides no evidence to suggest that this two year extension would obviate those agreements.[54]

---

[49] 18 C.F.R. § 385.2008(a) (2019) (allowing the relevant decisional authority to extend for good cause the time by which any person is required or allowed to act under any statute rule or order).

[50] *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165 at P 8 (citing *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149, at P 11 (2012)).

[51] *Id.*

[52] *See, e.g.,* supra n.45; *see also Golden Triangle Storage, Inc*., 121 FERC ¶ 61,313, at ordering para. (M) (2007) (six years to complete gas storage project).

[53] Certificate Order, 158 FERC ¶ 61,061 at P 74.

[54] Moreover, construction of the project cannot commence until service agreements have been executed for the volume of service subscribed under the precedent agreements.  Certificate Order, 158 FERC ¶ 61,061 at ordering para. (E).

17.    We recognize that environmental impacts are subject to change, and that the validity of our conclusions and environmental conditions cannot be sustained indefinitely.  However, the record here does not reflect any environmental changes in the project area or any new information that calls into question our prior findings that the Atlantic Bridge Project, as conditioned, is not a major federal action significantly affecting the quality of the human environment.

18.    The Council on Environmental Quality's regulations address circumstances where supplemental environmental analysis is necessary due to stale environmental information, for example, where an agency "makes substantial changes in the proposed action that are relevant to environmental concerns" or where there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."[55]  New information must be sufficient to show that the remaining federal action will affect the environment in a significant manner or to a significant extent not already considered.[56]  Moreover, the environment conditions of the Certificate Order anticipate that environmental impacts may change during construction and, therefore, authorize the OEP Director to implement any additional measures deemed necessary avoid or mitigate adverse environmental impacts.[57]

19.    Here, Algonquin requests to change only the timing of the Atlantic Bridge Project and no new circumstances or information have been presented that were not already considered.  Weymouth wrongly asserts that there is new information concerning the presence of coal ash at the Weymouth Compressor Station site.  The EA states that samples collected at the site showed that the fill materials exceed some Massachusetts environmental standards, including arsenic, and that these high levels were attributed to the presence of coal ash from historic use of the site as an oil terminal and coal storage facility.[58]  The EA also finds that if contaminated soil or groundwater is encountered during construction, all on-site personnel would stop work, evacuate the area, and implement the Unexpected Contamination Encounter Procedure.[59]  The Certificate Order states that a Licensed Site Professional will oversee soil and groundwater management activities at the Weymouth site during construction for compliance with the applicable provisions of the MCP and related Massachusetts Department of Environmental

---

[55] 40 C.F.R. § 1502.9(c)(1)(i)-(ii) (2019).

[56] *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 374 (1989).

[57] Certificate Order, 158 FERC ¶ 61,061 at Appendix B, Environmental Condition 2.

[58] EA at 2-67.

[59] EA at 2-8.

Protection (Massachusetts DEP) polices and guidance.[60]  Moreover, on rehearing, the Commission reiterated that compliance with state requirements is sufficient to address concerns associated with disturbing contaminated soils at the Weymouth Compressor Station site and the environmental inspector is empowered to order correction of acts that violate the environmental conditions of the Certificate Order.[61]  Finally, we note that in its answer, Algonquin states that it remains in compliance with the applicable provisions of the MCP.[62]

20.    Last, Petitioners state that Environmental Condition 1 of the Certificate Order requires Algonquin to explain how a modification provides an equal or greater level of environmental protection than the original measure.[63]  Petitioners argue that the December 26 Letter Order fails to discuss how the extension of time meets this requirement.[64]  Petitioners' argument is inapt as Environmental Condition 1 refers to changes to construction procedures and mitigation measures and is not applicable to requests for an extension of time.

### C.    Good Cause for Issuing the Extension

21.    Weymouth asserts that neither Algonquin's request nor the December 26 Letter Order demonstrates that good cause exists for granting the two year extension.[65]  Weymouth argues that, for good cause to exist, the pipeline must demonstrate that "it made good faith efforts to meet its deadline but encountered unforeseeable circumstances, such as difficulties in obtaining deliveries of needed materials or discovery of cultural remains on an approved right-of-way."[66]  Weymouth also contends that the pipeline company "bears a heavy burden of showing good cause as to why it should not be held to the prompt development requirements."[67]

---

[60] Certificate Order, 158 FERC ¶ 61,061 at P 129.

[61] *Algonquin Gas Transmission, LLC*, 161 FERC ¶ 61,255, at P 67 (2017).

[62] Algonquin Answer at 11.

[63] Petitioners' Request for Rehearing at 14.

[64] *Id.*

[65] Weymouth Request for Rehearing at 9.

[66] *Id.* (citing *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165).

[67] *Id.* (citing *Gary and Catherine Wright*, 37 FERC ¶ 62,165, at 63,171 (1986)).

22.    Weymouth contends that nothing in the record supports Algonquin's assertion that it is likely to obtain necessary approvals by mid-2019,[68] and argues that Algonquin's inability to obtain the required permitting is a direct result of its failure to cooperate with the State of Massachusetts and Weymouth, as required by the Certificate Order.[69] Weymouth states that when Algonquin requested the extension of time, Algonquin was still waiting for its Coastal Zone Management Act consistency determination from the Massachusetts Office of Coastal Zone Management because Algonquin had not obtained licenses under the Massachusetts Wetlands Protection Act and Massachusetts Waterways Program.[70]

23.    Weymouth asserts that Algonquin failed to obtain a Waterways Program license because it refused to file a request for a municipal zoning certificate with Weymouth under the assumption that all municipal zoning ordinances are preempted by the Natural Gas Act (NGA).[71] Weymouth contends that Algonquin must comply with those aspects of the zoning ordinance that do not unreasonably delay the project or frustrate the purpose of the NGA.[72] Weymouth avers that, despite knowing its position, Algonquin waited nearly one year to file suit in federal district court asserting that the Weymouth's zoning ordinance is preempted.[73] Weymouth argues that Algonquin's refusal to file for a zoning permit and waiting nearly one year to file its lawsuit demonstrates that Algonquin is responsible for any delay in obtaining a Waterways Program license.[74]

24.    With respect to the Wetlands Protection Act license, Weymouth states that the Weymouth Conservation Commission denied Algonquin a permit under the Town's local ordinance on May 25, 2016, and, rather than appealing that decision with the Weymouth Conservation Commission, Algonquin filed a lawsuit in federal district court on

---

[68] *Id.* at 13-14 (citing *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149, at P 10 ("an extension of time ... might not be warranted unless the company can demonstrate credible prospects for its project's completion")).

[69] *Id.* at 9.

[70] *Id.* at 9-10.

[71] *Id.* at 10.

[72] *Id.* (citing *Maritimes & Ne. Pipeline, L.L.C.*, 81 FERC ¶ 61,166, at 61,729-30 (1997) and *Weaver's Cove Energy, LLC*, 114 FERC ¶ 61,058, at PP 143-145 (2006)).

[73] *Id.* at 10-11 (stating that Algonquin knew Weymouth's position on July 10, 2017, and filed suit on May 3, 2018).

[74] *Id.* at 11.

May 4, 2017, nearly a year after the denial.[75]  Weymouth notes that this lawsuit was filed over six months after Massachusetts DEP stayed the administrative appeal of the Wetlands Protection Act license.[76]  Weymouth argues that had Algonquin appealed the denial under the local ordinance, this extensive delay would not have occurred.[77]  Weymouth further notes that even after the administrative appeal was lifted, Algonquin refused to file a required plan of record with Massachusetts DEP reflecting a jurisdictional change to the Riverfront Area until it was ordered to do so.[78]

25.     Weymouth notes that the Commission has granted more time to "encourage ... project sponsors to cooperate with state and local agencies" and provide "more time for state and local agencies to act."[79]  Weymouth argues that in this case Algonquin had refused to work cooperative with state and local agencies, and, therefore, any delay is Algonquin's responsibility.[80]

26.     With respect to the license under the Wetlands Protection Act, Algonquin states that it applied to the Weymouth Conservation Commission for approval on February 22, 2016, nearly a year before receiving its certificate, and the Conservation Commission issued a decision denying Algonquin's application on June 15, 2016.[81]  Algonquin states that, on June 29, 2016, it requested a superseding order from Massachusetts DEP that would override the Conservation Commission's decision, and Massachusetts DEP issued that order on September 7, 2016.[82]  However, because the September 7, 2016 order was appealed by Weymouth, it did not become final until the appeal was completed.[83]

---

[75] *Id.*

[76] *Id.*

[77] *Id.* at 11-12.

[78] *Id.* at 12.

[79] *Id.* (quoting *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165 at P13).

[80] *Id.* (noting that on two occasions the Weymouth Conservation Commission had to contact Algonquin concerning absent or incorrect information filed with its application and, in a separate instance, failed to comply with Massachusetts the Subdivision Control Law).

[81] Algonquin Answer at 4.

[82] *Id.*

[83] *Id.*

Algonquin asserts that Weymouth twice supported holding the appeal in abeyance – first until Certificate Order was issued, then until Algonquin obtained a judgment regarding whether the local wetlands protection ordinance was preempted.[84]  Algonquin states that it filed suit in federal district court less than one month after the administrative presiding officer agreed with Weymouth on the continued abeyance,[85] and, the court subsequently found that Weymouth's ordinance is preempted.[86]

27.    As to the Waterways Program license, Algonquin states that it filed an application for a license with Massachusetts DEP on December 8, 2015, less than two months after filing its certificate application, and, on May 17, 2017, the Massachusetts DEP issued a "Written Determination" expressing its intent to approve Algonquin's application, which was subsequently appealed by Weymouth.[87]  Algonquin asserts that, like the Wetlands Protection Act license, the Waterways Program license cannot become final until the appeal is completed.  However, Weymouth has obtained a stay of its appeal pending completion of the litigation over whether federal law preempted Weymouth's wetlands ordinance.[88]

28.    Algonquin asserts that it has also been forced to file a separate lawsuit to address Weymouth's argument in the Waterways Program proceeding that Algonquin's proposed compressor station is subject to Weymouth's Zoning Ordinance.[89]  Algonquin states that, in ruling that the Zoning Ordinance is preempted, the district court stated that "the issues of the [Waterways Program] License has been delayed for nearly two years, in part," due to Weymouth's insistence that Algonquin comply with "a local zoning ordinance subject to federal preemption."[90]

---

[84] *Id.* at 4-5.

[85] *Id.* at 5 (noting that administrative presiding officer issued its order on April 7, 2017, and Algonquin filed suit on May 4, 2017).

[86] *Algonquin Gas Transmission, LLC v. Weymouth, Massachusetts*, No. 17-10788-DJC, 2017 WL 6757544 (D. Mass. Dec. 29, 2017), *aff'd,* 919 F.3d 54 (1st Cir. 2019).

[87] Algonquin Answer at 5.

[88] *Id.* at 5-6.

[89] *Id.* at 6.

[90] *Id.* (citing *Algonquin Gas Transmission, LLC v. Town of Weymouth*, 365 F. Supp. 3d 147, 155 (D. Mass. 2019)).

29.     Algonquin contends that Weymouth wrongly blames Algonquin for not applying for a municipal zoning certificate, noting that the district court has confirmed that federal law preempts Weymouth from applying any provisions of its zoning ordinance.[91]  With respect to Weymouth's claim that Algonquin should have appealed the Weymouth Conservation Commission's decision, Algonquin notes that the district court held that the NGA prevents Weymouth from applying its local wetlands ordinance and that it filed a suit less than 30 days after the administrative presiding officer agreed with Weymouth to hold the state proceeding in abeyance until the preemption claims were adjudicated.[92]  Algonquin argues even if it had filed this lawsuit earlier, it would not have obviated the need to extend the January 25, 2019 deadline for constructing the Weymouth Compressor Station, given the timing and status of the required permits.[93]

30.     Algonquin also contends that Weymouth's claim that it refused to file a required plan of record with Massachusetts DEP reflecting a jurisdictional change to the Riverfront Area is unfounded.[94]  Algonquin asserts that the presiding officer in that proceeding explained that whether or not a revised plan had been formally filed, "[a]ll of the parties have been familiar with the revised plan" and there was "no need to delay th[e] proceeding," apart from a two day adjustment for pre-filed direct testimony.[95]

31.     Algonquin concludes that its consistent diligent efforts to move the permitting process forward despite these obstacles, constitute ample good cause for extending the deadline for the project's in-service date.[96]

32.     Construction deadlines may be extended for good cause.[97]  As the Commission has explained, "good cause" can be shown by a project sponsor demonstrating that it made good faith efforts to meet its deadline but encountered unforeseeable

_____

[91] *Id.* at 7.

[92] *Id.* at 8.

[93] *Id.* (noting that Weymouth argued in court that state-law challenges must be adjudicated by Massachusetts DEP prior to the federal court's preemption ruling).

[94] *Id.* at 8-9.

[95] *Id.* at 9 (citing Weymouth Rehearing Request at Exhibit G).

[96] *Id.* at 7-8.

[97] 18 C.F.R. § 385.2008(a) (2019) (allowing the relevant decisional authority to extend for good cause the time by which any person is required or allowed to act under any statute rule or order).

circumstances.[98]  The Commission has previously found that providing more time for a
project applicant to obtain necessary permits can be an appropriate basis for granting an
extension of time.[99]  The Commission has also found that a certificate holder is free to
decide how to satisfy the Certificate Order's prerequisites for construction.[100]

33.     Here, Algonquin has demonstrated good cause exists to grant the two year
extension.  At the time of its request, Algonquin had yet to receive two state permits
necessary for the consistency determination under the Coastal Zone Management Act.  In
both instances, Algonquin applied for these licenses before the Certificate Order was
issued, and in both instances Massachusetts Department of Environmental Protection has
held proceedings in abeyance and required Algonquin to seek declaratory judgments in
district court.  As detailed above, Weymouth has participated in the proceedings before
the Massachusetts Department of Environmental Protection and has supported the
agency's decision to hold proceedings in abeyance while the district court determined
what local ordinances were preempted by the NGA.  The fact that Algonquin chose to
argue that certain local ordinances are preempted by the NGA is an argument it is entitled
to make.

34.     We also are not persuaded by Weymouth's assertion that Algonquin unduly
delayed filing lawsuits in district court.  Algonquin filed its suit challenging the
applicability of the wetlands ordinance less than one month after the administrative
presiding officer issued its order holding the Wetlands Protection Act proceeding in
abeyance.  With respect to the suit challenging the applicability of the zoning ordinance,
we find that Algonquin did not unduly delay seeking a court judgment and an earlier
filing would not have allowed Algonquin to proceed with construction any sooner.

---

[98]  *See*, *e.g.*, *Chestnut Ridge Storage LLC*, 139 FERC ¶ 61,149, at P 11 (denying
request for extension of time).

[99]  *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165 (granting a two-year extension
of time to accommodate the project applicant's ongoing efforts to obtain a permit from
the New York State Department of Environmental Conservation).  *See also Perryville
Gas Storage LLC*, Docket Nos. CP09-418-000, et al. (Oct. 12, 2016) (delegated order)
(granting two year extension of time to complete construction to accommodate delays in
obtaining a permit from the Louisiana Department of Natural Resources); *Columbia Gas
Transmission, LLC*, Docket No. CP13-8-000 (Sept. 30, 2015) (delegated order) (granting
pipeline project two-year extension of time to complete construction due to delays in
obtaining waterbody crossing permits); *Bobcat Gas Storage*, Docket Nos. CP09-19-000
et al. (Mar. 25, 2015) (delegated order) (granting a two year extension of time because
applicant had not yet obtained required permit from a state agency).

[100]  *Constitution Pipeline Co., LLC*, 165 FERC ¶ 61,081, at P 14 (2018).

35.     Last, neither Petitioners nor Weymouth challenge the December 26 Letter Order's assertion that the extension was warranted to allow Algonquin to complete the HDD of the Taconic Parkway in New York.

36.     In sum, Algonquin has been engaged in complex litigation as part of its efforts to obtain state authorization.  The record before us reflects no bad faith or delay on the company's part, but rather what appears to be reasonable efforts to move the project forward.  Therefore, we find that good cause exists to grant the two year extension of time to complete construction of the Atlantic Bridge Project.

### D.    Time between Filing the Request and Issuance of the December 26 Letter Order

37.     Petitioners argue that because the December 26 Letter Order was issued only 34 minutes after Algonquin filed its request, the Certificates Branch Chief could not have properly considered the request.[101]  Petitioners and Weymouth note that in January 2018, Congressman Stephen Lynch had requested that the Commission not grant any extensions of time for the project and that the Chairman responded by saying that there was no pending extension of time request in the proceeding.[102]  In light of this prior letter, Weymouth contends Commission staff wrongly granted the extension prior to the public having an opportunity to comment, and that if the public had an opportunity to comment, the comments would have supported a denial of the request.[103]  Petitioners contend that given the prior correspondence concerning extensions of time, the Commission must document the level of review completed, including what additional staff participated in such review.[104]

38.     We disagree that the timing of the December 26 Letter Order implies that the request was not properly considered.  Commission staff closely monitors projects during the construction phase and was aware of the ongoing delays resulting from the litigation discussed above.  Accordingly, staff was in a position to determine immediately that an extension was warranted.  Additionally, the Commission is not required to solicit public input before acting upon a certificate-holder's request for an extension of time,[105] and

---

[101] Petitioners' Request for Rehearing at 11-12.

[102] *Id*. at 12-13 (citing Chairman McIntyre's March 21, 2018 Letter); Weymouth Request for Rehearing at 13.

[103] Weymouth Request for Rehearing at 13.

[104] Petitioners' Request for Rehearing at 13.

[105] *Constitution Pipeline Co., LLC*, 165 FERC ¶ 61,081 at P 23.

nothing in the Commission's regulations suggests that an opportunity for notice and comment is required.[106]  In any event, rehearing provides a full opportunity to challenge the staff action,[107] and we have considered and addressed Weymouth and Petitioners' concerns in this order.[108]

39.    Further, while not required, as a matter of practice the Commission itself generally acts on requests for extensions of time to complete construction for NGA facilities when such requests are contested before order issuance.[109]  To ensure that the Commission acting as whole act on requests that may be contested, and further increase transparency and durability of Commission orders, going forward the Office of the Secretary and Office of Energy Projects are directed to notice all requests for extension of time to complete construction for NGA facilities within 7 calendar days of receiving the request.

---

[106] *Cf. Bangor Hydro-Elec. Co.*, 87 FERC ¶ 61,035 (1999) (grant of extension of time is an administrative matter between Commission and licensee; intervention denied and request for rehearing rejected); *Wis. Valley Improvement Co.*, 88 FERC ¶ 61,054 (1999) (motion to intervene and request for rehearing in proceeding granting extension of time for post-license compliance dismissed; proceeding not type in which intervention and rehearing lie); *Felts Mills Energy Partners, L.P.*, 86 FERC ¶ 61,120, *reh'g denied*, 87 FERC ¶ 61,094 (1999) (motions to intervene and requests for rehearing regarding extensions of time generally are not entertained).

[107] *See Minisink Residents for Environmental Preservation and Safety v. FERC*, 762 F.3d 97, 115 (D.C. Cir. 2014); *Jepsen v. FERC*, 420 F. Appx 1, 2 (D.C. Cir. 2011) (unpublished opinion); *Blumenthal v. FERC*, 613 F.3d 1142, 1145-46 (D.C. Cir. 2010).

[108] The Chairman's letter to Congressman Lynch merely notes that there was no pending request for an extension of time at the time of the correspondence and in no way implies that the public would be afforded an opportunity to comment on any subsequent request.  *See* Chairman McIntyre's March 21, 2018 Letter.

[109] *See, e.g.*, *Constitution Pipeline Co.*, 165 FERC ¶ 61,081; *Arlington Storage Co., LLC*, 155 FERC ¶ 61,165.  The dissent states that "[w]hether to modify a significant deadline in a section 7 certificate is an important issue that should be resolved by the Commission acting as a whole, not Commission staff acting through its delegated authority."  We agree that the Commission as a whole should act on contested extensions of time to complete construction.  Indeed, the Commission generally does.  In this case, the OEP Director's designee acted before the extension request was protested.  As discussed above, we find the designee's action was permissible under the Commission's regulations and proper as Algonquin demonstrated good cause.  Nevertheless, to ensure the Commission as a whole may act on contested extensions of time for NGA facilities, we announce in this case a process by which the Commission will notice extensions of time for NGA facilities for comment and intervention.

Each notice shall establish a 15 calendar day intervention and comment period deadline. Only interventions from entities that were party to the underlying proceeding will be accepted. No reply comments or answers will be considered.

40.    For all of those extension requests that are contested,[110] the Commission acting as a whole will aim to issue an order acting on the request within 45 days. The Commission will address all arguments relating to whether the applicant has demonstrated there is good cause to grant the extension. The Commission will not consider arguments that re-litigate the issuance of the certificate order, including whether the Commission properly found the project to be in the public convenience and necessity and whether the Commission's environmental analysis for the certificate complied with the National Environmental Policy Act.[111] At the time a pipeline requests an extension of time, orders on certificates of public convenience and necessity are final and the Commission will not re-litigate their issuance. The OEP Director, or his or her designee, will act on all of those extension requests that are uncontested.

41.    We encourage pipeline applicants requesting such extensions to sufficiently demonstrate good cause necessitates the extension of time, and to file their requests no more than 120 days before the deadline to complete construction. Upon receipt of extension of time, the deadline for completing construction will be tolled pending Commission action. Further, when making an NGA application, the applicant may request a construction timeline that recognizes that potential permitting or other delays may impact the project.

---

[110] Contested proceedings are those where an intervenor disputes any material issue of the filing. 18 C.F.R. § 385.2201(c)(1) (2019).

[111] Similarly, the Commission will not re-litigate the issuance of an NGA section 3 permit, including whether a proposed project is not inconsistent with the public interest and whether the Commission's environmental analysis for the permit order complied with NEPA.

The Commission orders:

    (A)    Petitioners' January 25, 2019 request for rehearing of the
December 26 Letter Order is denied.

    (B)    Weymouth's January 25, 2019 request for rehearing of the
December 26 Letter Order is denied.

By the Commission.  Commissioner Glick is dissenting with a separate statement
                         attached.

( S E A L )

                                Nathaniel J. Davis, Sr.,
                                Deputy Secretary.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Algonquin Gas Transmission, LLC                    Docket No.    CP16-9-009

(Issued February 21, 2020)

GLICK, Commissioner, *dissenting*:

1.        On December 26, 2018, the Commission's staff extended by two years the
deadline to complete construction of the Atlantic Bridge pipeline just hours after the
project's developer—Algonquin Gas Transmission, LLC (Algonquin)—asked for the
additional time.[1]  I dissent from today's order denying rehearing of Commission staff's
action because, in my opinion, such a significant modification of a condition in a natural
gas pipeline certificate requires consideration and action by the Commission as a whole,
not Commission staff on its own.   This proceeding presents important issues and the
parties deserve better than a cursory response from Commission Staff.

2.        The relevant facts are straightforward.  On January 25, 2017, the Commission
issued a certificate of public convenience and necessity under Natural Gas Act (NGA)
section 7[2] for the Atlantic Bridge pipeline.[3]  The certificate required that the project be
completed and put into service within two years—*i.e.*, by January 25, 2019.[4]  In addition,
the certificate required the developers to secure the necessary federal approvals prior to
beginning any construction.  Before long, it became clear that those approvals would not
be immediately forthcoming and that the project would not be finished as originally
anticipated.  Although the parties disagree vehemently over who bears responsibility for
that delay, the fact of the delay is all that matters for these purposes.  On the day after
Christmas—December 26, 2018—a month before the deadline to complete construction,

---

        [1] According to the eLibrary entries, the extension request was received by the
Commission at 8:00:17 AM on December 26, 2018, and was published to the docket at
10:51:53 AM.  Commission staff's letter order granting the extension request appeared
on the docket less than an hour later at 11:40:41 AM.

        [2] 15 U.S.C. § 717f (2018).

        [3] *Algonquin Gas Transmission, LLC*, 158 FERC ¶ 61,061, *reh'g denied*, 161
FERC ¶ 61,255 (2017).

        [4] *Id.* Order Para. B(1).

Algonquin submitted a request for a two-year extension of that deadline.[5]  As noted above, Commission staff granted the request a few hours later, just minutes after it appeared on the docket.[6]

3.      Whether to modify a significant deadline imposed by a section 7 certificate is an important issue that should be resolved by the Commission acting as a whole, not Commission staff acting through its delegated authority.[7]  For one thing, a deadline to complete construction helps to limit the disruption caused by constructing a new pipeline by ensuring that any disruption occurs within a discrete timeframe and that construction is not prolonged for years into the future.  In addition, a deadline to complete construction helps to ensure that the Commission does not award certificates to speculative projects or projects that cannot or will not be timely completed.  Finally, as today's order explains, a deadline for completing construction "diminish[es] the potential that the public interest might be compromised by significant changes occurring between issuance of the certificate and commencement of the project."[8]  In short, deadlines to complete construction are an important tool for the Commission to use in ensuring that an interstate natural gas pipeline is developed in a manner that is consistent with the public interest.[9]

4.      In some cases, there may be a good reason for a delay in a new pipeline's construction schedule and, in those instances, it may be consistent with the public interest to extend the relevant deadline.  But whether good cause exists and whether an extension is consistent with the public interest is an important question that each Commissioner should decide for themselves.  After all, it is the Commissioners that are nominated by

---

[5] *See supra* n.1.

[6] *Id.*

[7] In any case, the Commission's delegation of authority to its staff is permissive. Nothing requires Commission staff to exercise delegated authority in every instance in which it is conceivably authorized to do so.  Commission staff, acting on its own or at the direction of the Chairman or the Commission, could choose not use its delegated authority, allowing the Commission to issue an order on the merits.  Such forbearance is not uncommon in other areas where the Commission has delegated its authority.

[8] *Algonquin Gas Transmission, LLC*, 170 FERC ¶ 61,144, at P 15 (2020) (internal quotation marks and alterations omitted) (Order).

[9] Indeed, the Commission's regulations provide that a deadline to complete construction is one of the standard conditions that it attaches to section 7 certificates.  *See* 18 CFR § 157.20(b) (2019).

the President and confirmed by the Senate to make the decisions entrusted to the Commission pursuant to our various statutory authorities.

5.      That is especially true here, where the Commission was on notice that any extension in this proceeding was likely to be disputed.[10]  A proceeding in which the relevant law and facts are subject to significant disagreement is likely to raise important questions that deserve the Commissioners' attention and demand a reasoned response from the Commission as a whole.  Under those circumstances, Commission staff's exercise of delegated authority will rarely, if ever, constitute an adequate response.

6.      Although my concerns would apply to any exercise of delegated authority under these circumstances, I am particularly troubled by the facts before us here.  As explained above, the extension request was approved the same morning it came in and only minutes after it was published on the docket.[11]  That means that the parties who opposed the extension had no opportunity whatsoever to be heard before it was granted.  Moreover, I do not see how, on the record before us, a few hours was anywhere near enough time to meaningfully evaluate whether good cause existed to extend the deadline, much less to render the type of reasoned decision that the Administrative Procedure Act requires.[12]

7.      Actions like these only lend further credence to those who view the Commission as a rubber stamp in pipeline proceedings.  We can and must do better.  The process of producing an order that is voted on by the full Commission may not be perfect—and the Commissioners may not always agree—but that process will almost certainly deliver more reasoned and considered decisionmaking than the parties received here.

8.      The Commission responds to my concerns by asserting that it "generally acts" on contested requests for an extension of time and proposing a new policy for noticing and

---

[10] In January 2018, a member of Congress representing one of the towns affected by the project sent a letter to the Commission urging that it deny any request to extend the deadline to commence construction.  *See* February 22, 2018 Letter from Congressman Stephen F. Lynch.  The Chairman responded to this letter by noting that no request for an extension had been filed, *see* March 21, 2018 Letter from Chairman McIntyre, which was true at the time.  The request was filed several months later and only a couple of hours before the delegated order was issued, likely without time to notify the Chairman that such a request had been subsequently filed.  I certainly received no such notification.

[11] *See supra* n.1.

[12] *See, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (requiring that agency action be the product of reasoned decisionmaking).

responding to extension requests.[13]  That assertion is more than a little sanctimonious coming in a proceeding where the requested extension was granted less than an hour after it appeared on the docket, well before any party had an opportunity to object.

9.      Nevertheless, I recognize that the new policy is a step in the right direction and, insofar as it represents progress, I support it.  But it cannot cure the error that already took place in this proceeding.  In any case, because I believe that these extension requests represent important questions, I would prefer not to truncate parties' opportunity to be heard by prohibiting reply comments and answers.[14]  In addition, although I agree that extension requests should not be a forum to re-litigate the underlying certificate,[15] parties must have the right to argue that developments since the issuance of the certificate have called into question the Commission's finding of public convenience and necessity.  That said, I will keep an open mind in evaluating how this policy plays out and whether it provides parties with adequate process for addressing extension requests.

        For these reasons, I respectfully dissent.

_____

Richard Glick
Commissioner

---

[13] Order, 170 FERC ¶ 61,144 at P 39.

[14] *Id.*

[15] *Cf. Eagle Crest Energy Co.*, 167 FERC ¶ 61,117 (2019) (Glick, Comm'r, dissenting in part at P 3).

# EXHIBIT B

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, D.C. 20426

OFFICE OF ENERGY PROJECTS

In Reply Refer to:
OEP/DCP Branch 1
Algonquin Gas Transmission, LLC
Docket No. CP16-9-000
§ 375.308(w)(4)

December 26, 2018

Chris Harvey
Manager, Rates and Certificates
Algonquin Gas Transmission, LLC
5400 Westheimer Court
Houston, Texas   77056

RE:     Approval for Extension of Time to Complete Project

Dear Mr. Harvey:

Algonquin Gas Transmission, LLC's December 26, 2018 request for an extension of time to complete its project and place the approved facilities into service is granted until January 25, 2021.  On January 25, 2017, the Federal Energy Regulatory Commission issued its Order Issuing Certificate and Approving Abandonment in the above-referenced docket authorizing Algonquin to construct, own, operate, and maintain the Atlantic Bridge Project.  Ordering Paragraph B of the Certificate Order required Algonquin to complete construction of the Project facilities and make them available for service within two years from the date of the order, or by January 25, 2019.

By the letter of December 26, 2018, Algonquin explains that there are further permitting delays for the Weymouth Compressor Station and that there is ongoing construction of the Horizontal Directional Drill of the Taconic Parkway in New York. Algonquin states that it will require additional time to complete construction of these facilities and place them into service.  Algonquin estimates that if all final permits would be issued for the Weymouth Compressor Station by mid-2019, it would require a two year extension of time, until January 25, 2021, to allow for sufficient time once all permits are received to complete construction and place all of the certificated Project facilities into service.

This action is granted pursuant to authority delegated to the Commission in 18 CFR§375.308(w)(4).   Algonquin is reminded that it must comply with all applicable remaining terms and conditions of the Commission's regulations, as well as procedures stipulated in your previous filings and authorizations.


Sincerely,


Richard Foley
Chief, Certificate Branch 1
Division of Pipeline Certificates
Office of Energy Projects


cc:      Public file, Docket No. CP16-9-000

# EXHIBIT C

UNITED STATES OF AMERICA
BEFORE THE
FEDERAL ENERGY REGULATORY COMMISSION

|  |  |  |
|---|---|---|
| Algonquin Gas Transmission, LLC | ) | Docket No. CP16-9-000 |
| Maritimes and Northeast Pipeline LLC | ) | |
|  | ) | |

**REQUEST FOR REHEARING OF APPROVAL FOR EXTENSION OF
TIME TO COMPLETE PROJECT BY THE FORE RIVER RESIDENTS
AGAINST THE COMPRESSOR STATION, CITY OF QUINCY,
MASSACHUSETTS, WEYMOUTH COUNCILOR REBECCA HAUGH,
MICHAEL H. HAYDEN AND FOOD & WATER WATCH**

Pursuant to Rule 713 of the Federal Energy Regulatory Commission's ("FERC" or "Commission") Rules of Practice and Procedure, 18 C.F.R. §157.20, 18 CFR §375.308, 18 C.F.R. §385.713, 18 C.F.R. §385.1902, 5 U.S.C. §706(2)(C) and Section 717r(a) of the Natural Gas Act, 15 U.S.C. §717r(a), the Fore River Residents Against the Compressor Station, City of Quincy, Massachusetts, Weymouth Councilor Rebecca Haugh, Michael H. Hayden and Food & Water Watch, all intervenors in this proceeding, respectfully request rehearing and rescission of FERC's Office of Energy Projects (OEP) Approval for Extension of Time to Complete Project issued on December 26, 2018 at 11:51 a.m. (hereinafter "Approval for Extension of Time to Complete Project") in response to a Request for Certificate Extension filed by Chris Harvey, Manager, Rates and Certificates for Algonquin Gas Transmission, LLC ("Applicant") only 34 minutes earlier, on December 26, 2018 at 11:17 a.m. (hereinafter "Request for Certificate Extension").

## I.    ALLEGED ERROR IN THE FINAL DECISION OR FINAL ORDER

FERC's January 25, 2017 Order Issuing Certificate and Authorizing Abandonment for the Atlantic Bridge Project ("Order") included express conditions for the modification of any conditions included in the Order and did not delegate authority to OEP Chief Certificate Branch 1

to issue the Approval for Extension of Time to Complete Project, therefore, the statement that "[t]his action is granted pursuant to authority delegated to the Commission in 18 CFR §375.308(w)(4)" set forth in the Approval for Extension of Time to Complete Project is unsupported by the Order and as a matter of law.  Furthermore, even if such subdelegation was authorized, the Applicant did not satisfy the express conditions of the Order and there was also not sufficient time for the Request for Certificate Extension to be properly considered.

## II.    STATEMENT OF ISSUES

### Issue 1

**The Request for Certificate Extension did not satisfy the express conditions of the Order and the Approval for Extension of Time to Complete Project Was Issued by OEP Chief Certificate Branch 1, Which is Neither Authorized by the Order, Nor Applicable Regulations.**

As discussed in further detail herein, neither the Order, nor the applicable regulations [to wit, 18 C.F.R. §375.301, 18 C.F.R. §375.308 and 5 U.S.C. §706(2)(C)] permit subdelegation of an Approval for Extension of Time to Complete Project in contested applications to OEP Chief Certificate Branch 1.  "The Administrative Procedure Act compels courts to 'hold unlawful and set aside agency action, findings, and conclusions' if they are 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'"  League of Women Voters of United States v. Newby, 2017 WL 1273895, *4 (D.D.C. Feb. 24, 2017), *citing* 5 U.S.C. § 706(2)(C).

### Issue 2

**Even if Delegation for the Approval for Extension of Time to Complete Project Issued by OEP Chief Certificate Branch 1 Was Authorized, There Was Not Sufficient Time Between the Request for Certificate Extension and the Approval for Extension of Time to Complete Project For the Request for Certificate Extension To Have Been Properly Considered**

As discussed in further detail herein, the Applicant's Request for Certificate Extension filed by Chris Harvey, Manager, Rates and Certificates for Algonquin Gas Transmission, LLC was

2

distributed to FERC's distribution list at 11:17 a.m. on December 26, 2018. FERC's Approval for Extension of Time to Complete Project was distributed to FERC's distribution list at 11:51 a.m. on December 26, 2018, only 34 minutes after the Applicant's Request for Certificate Extension was distributed to FERC's distribution list (at 11:17 a.m.). This span of 34 minutes between Applicant's Request for Certificate Extension and FERC's Approval for Extension of Time to Complete Project necessarily means that the required level of review was not completed prior to issuance of the Approval for Extension of Time to Complete Project.

## III.    STATEMENT OF RELEVANT FACTS

On January 3, 2018, Congressman Stephen F. Lynch wrote to FERC stating, in pertinent part, "I respectfully request that you deny any application by Spectra Energy for an extension of the timeline to begin work on the compressor." (CP16-9-000, 20180223-0007, attached hereto as Exhibit 1). In response, FERC Chairman, Kevin J. McIntyre, wrote to Congressmen Lynch, on March 21, 2018, stating, in pertinent part, "Algonquin has not to date made any requests for an extension of time, so there is no matter pending before the Commission for consideration." (CP16-9-000, 20180323-0018, attached hereto as Exhibit 2).

The Order itself does not expressly allow for an extension of the completion of construction of the Applicant's authorized facilities. Rather, the Order cites to Section 157.20(b) of the Commission's regulations in providing:

The Commission orders:

(A) A certificate of public convenience and necessity is issued authorizing Algonquin and Maritimes to construct and operate the Atlantic Bridge Project, as described in this order and in their application.

(B) The certificate authority issued in Ordering Paragraph (A) shall be conditioned on the following:

(1) Algonquin and Maritimes' completion of construction of the authorized facilities and making them available within two years from the date of this order, pursuant to section 157.20(b) of the Commission's regulations;

(Order, 89).  Neither does the regulation cited by the Order, 18 CFR 157.20(b), provide for an

extension of the completion of construction of the Applicant's authorized facilities.  Rather, 18

CFR 157.20(b) states in full:

> Any authorized construction, extension, or acquisition shall be completed and made available for service by applicant and any authorized operation, service, or sale shall be available for regular performance by applicant within (period of time to be specified by the Commission in each order) from the issue date of the Commission's order issuing the certificate. Applicant shall notify the in writing no later than 10 days after expiration of this time period that the end-user/shipper is unable to meet the imposed timetable to commence service.

18 CFR 157.20(b).  The Commission's regulation, 18 CFR 157.20(e), further provides, "

> The certificate issued to applicant is not transferable in any manner and shall be effective only so long as applicant continues the operations authorized by the order issuing such certificate and in accordance with the provisions of the Natural Gas Act, as well as applicable rules, regulations, and orders of the Commission.

18 CFR 157.20(e).  The language, "shall be effective only so long as applicant continues the

operations authorized by the order" does not contemplate an extension of the Commission's

deadline for "Algonquin and Maritimes' completion of construction of the authorized facilities

and making them available within two years from the date of this order."  (Order, 89).

Furthermore, the Order does not allow the Approval for Extension of Time to Complete

Project to supersede the deadline for "completion of construction of the authorized facilities and

making them available within two years from the date of this order".  Appendix B of the Order

(Environmental Conditions for Algonquin and Maritimes Atlantic Bridge Project) sets forth the

delegated authority of the Director of OEP. (Order, 93-100).  The only delegation of authority by

FERC set forth in the Order pertains solely to the Director of OEP and states as follows:  The

Director of OEP has delegated authority to take whatever steps are necessary to ensure the

4

protection of all environmental resources during construction and operation of the Project. This authority shall allow:

    a.    the modification of conditions of this Order; and

    b.    the design and implementation of any additional measures deemed necessary (including stop-work authority) to ensure continued compliance with the intent of the environmental conditions as well as the avoidance or mitigation of adverse environmental impact resulting from construction and operation of the Project.

(Order, Appendix B, ¶ 2, at 93). FERC's OEP organizational chart (updated June 4, 2018) lists the Office of the Director of OEP as consisting of a Director, Deputy Director and Sr. Policy Advisor. Below the Office of the Director of OEP on the organizational chart is Division of Pipeline Certificates, which consists of an Acting Director and Deputy Director. Below the Division of Pipeline Certificates on the organizational chart are two Certificates Branch Chiefs, including Certificates Branch 1 Chief. Nowhere in the Order is subdelegation by the Director of OEP to Chief, Certificate Branch 1, OEP Division of Pipeline Certificates, expressly authorized. (Order at 93-100).

Subdelegation is permitted, under 18 C.F.R. §375.301, by a specified Commission official, such as the Director of OEP, to "the head of a division, or a comparable official" only where the Commission, in delegating functions to the Commission official, expressly permits Commission official to further delegate said functions. With regard to subdelegation, 18 C.F.R. §375.301(b) states, in full:

(b) Where the Commission, in delegating functions to specified Commission officials, permits an official to further delegate those functions to a designee of such official, *designee* shall mean the deputy of such official, the head of a division, or a comparable official as designated by the official to whom the direct delegation is made.

18 C.F.R. §375.301(b) (emphasis in original). Absent the determination that the Chief, Certificate Branch 1, OEP Division of Pipeline Certificates, was subdelegated the authority to issue the Approval for Extension of Time to Complete Project, such authority does not exist. Furthermore,

18 C.F.R. §375.308 does not permit delegation to the Director of OEP, or the Director's designee, to grant Approval for Extension of Time to Complete Project on contested applications. To the contrary, 18 C.F.R. §375.308 memorializes FERC's delegation of authorization to the Director of OEP, or the Director's designee, to take action consistent with 28 separate subparagraphs, none of which include issuance of Approval for Extension of Time to Complete Project in contested applications by the Chief, Certificate Branch 1, OEP Division of Pipeline Certificates.

Delegations to the Director of the Office of Energy Projects, under 18 CFR § 375.308, states, in pertinent part:

The Commission authorizes the Director or the Director's designee to:

(a) Take appropriate action on uncontested applications and on applications for which the only motion or notice of intervention in opposition is filed by a competing preliminary permit or exemption applicant that does not propose and substantiate materially different plans to develop, conserve, and utilize the water resources of the region for the following:

***

(w) Take appropriate action on the following:

(1) Any notice of intervention or petition to intervene, filed in an <u>uncontested</u> application for pipeline facilities;

(2) An uncontested request from one holding an authorization, granted pursuant to the Director's delegated authority, to vacate all or part of such authorization;

(3) Petitions to permit after an initial 60-day period one additional 60-day period of exemption pursuant to § 284.264(b) of this chapter where the application or extension arrives at the Commission later than 45 days after the commencement of the initial period of exemption when the emergency requires installation of facilities;

(4) Applications for extensions of time to file required reports, data, and information and to perform other acts required at or within a specific time by any rule, regulation, license, permit, certificate, or order by the Commission; and

(5) Requests for waiver of the landowner notification requirements in § 157.203(d) of this chapter.

18 CFR § 375.308(a) and (w).

The Approval for Extension of Time to Complete Project cites 18 CFR § 375.308(w)(4) for subdelegation authority. This regulation, however, expressly relates to delegations to the

Director of the Office of Energy Projects ("OEP"). Although 18 CFR § 375.308(w)(4) authorizes "the Director or the Director's designee to. . .take appropriate action on the following…Applications for extensions of time to. . .perform other acts required at or within a specific time by any. . .order by the Commission", evidence that the Director of OEP expressly subdelegated authority to approve an extension of time to complete the Applicant's project to Chief, Certificate Branch 1, OEP Division of Pipeline Certificates, must be expressly designated. Furthermore, as discussed below, the subdelegation of authority under 18 CFR § 375.308(w)(4) does not diminish the level of review required by FERC in response to a Request for Certificate Extension.

There is no evidence that any of the required additional procedural steps discussed in *Rockies Express Pipeline LLC*, 128 FERC ¶61,045 (2009) were undertaken prior to the issuance of the Approval for Extension of Time to Complete Project. There no evidence that the Director of OEP actually did subdelegate this authority to Chief, Certificate Branch 1, OEP Division of Pipeline Certificates to grant Approval for Extension of Time to Complete Project in response to Request for Extension of Time to Complete Project arising out of the Order. If such evidence does exist, the *Rockies Express Pipeline LLC* decision specifies that such evidence should include internal documentation of the subdelegation, as well as information concerning the level of review completed by Chief, Certificate Branch 1, OEP Division of Pipeline Certificates, including what additional staff in his division participated in such review prior to issuing Approval for Extension of Time to Complete Project. 128 FERC ¶61,045.

7

**IV.     ARGUMENT (Matters Relied Upon By Party Requesting Rehearing)**

<u>Issue 1</u>

"The Administrative Procedure Act compels courts to 'hold unlawful and set aside agency action, findings, and conclusions' if they are 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'"  <u>League of Women Voters of United States</u>, 2017 WL 1273895 at *4, *citing* 5 U.S.C. § 706(2)(C).  "A corollary of this directive is that courts reviewing agency action must determine that 'the particular official acting on behalf of the agency [was] delegated the authority to act; otherwise such agency action is invalid.'"  <u>Id.</u>, *quoting* <u>Am. Vanguard Corp.</u>, 803 F. Supp. 2d at 12.  "When faced with the question of whether a particular agency official was subdelegated authority to act, courts in this Circuit examine the record, the relevant statute, and the implementing regulations to discern whether subdelegation occurred."  <u>Id.</u> (citations omitted).

Appendix B of the Order (Environmental Conditions for Algonquin and Maritimes Atlantic Bridge Project) sets forth the delegated authority of the Director of OEP concerning, *inter alia*, written authorization from the Director of OEP to commence construction of any Project facilities. (Order, 93-100).  The only delegation of authority by FERC set forth in the Order pertains solely to the Director of OEP and states as follows:

> The Director of OEP has delegated authority to take whatever steps are necessary to ensure the protection of all environmental resources during construction and operation of the Project.  This authority shall allow:
>
> a.      the modification of conditions of this Order; and
>
> b.      the design and implementation of any additional measures deemed necessary (including stop-work authority) to ensure continued compliance with the intent of the environmental conditions as well as the avoidance or mitigation of adverse environmental impact resulting from construction and operation of the Project.

(Order, Appendix B, ¶ 2, at 93).

8

Appendix B of the Order includes examples of where the Director of OEP's written authorization is required, including the following:

> Within 60 days of the acceptance of this Certificate and before construction begins, the Applicants shall file an Implementation Plan for the Project for review and written approval by the Director of OEP.

(Order, Appendix B, ¶ 6, at 95).

> Prior to receiving written authorization from the Director of OEP to commence construction of any Project facilities, the Applicants shall file with the Secretary documentation that it has received all applicable authorizations required under federal law (or evidence of waiver thereof).

(Order, Appendix B, ¶ 9, at 97).

> The Applicants must receive written authorization from the Director of OEP before commencing service on each discrete facility of the Project. Such authorization will only be granted following a determination that rehabilitation and restoration of the right-of-way and other areas affected by the Project are proceeding satisfactorily.

(Order, Appendix B, ¶ 10, at 97).

> . . .The Director of OEP must review and approve this plan in writing before construction of the alternative crossing.

(Order, Appendix B, ¶ 13, at 98).

> Prior to construction, Algonquin shall file with the Secretary, for the review and written approval of the Director of OEP, a revised set of Residential Construction Plans that incorporate and address the comments Algonquin received from affected landowners.

(Order, Appendix B, ¶ 15, at 98).

> Prior to construction during nighttime hours (10:00 p.m. to 7:00 a.m.) between mileposts 0.5 and 0.7 along the Southeast Discharge Take-up and Relay, Algonquin shall file with the Secretary for review and written approval by the Director of OEP, a nighttime construction noise analysis and mitigation plan for all NSAs within one half mile of the construction work areas where nighttime construction is requested.

(Order, Appendix B, ¶ 19, at 99).  Nowhere in the Order is subdelegation by the Director of OEP to OEP Chief Certificate Branch 1 expressly authorized.  (Order at 93-100).

Neither does 18 C.F.R. §375.301 permit subdelegation by the Director of OEP to OEP

Chief Certificate Branch 1. With regard to subdelegation, 18 C.F.R. §375.301(b) states, in full:

> (b)    Where the Commission, in delegating functions to specified Commission officials, permits an official to further delegate those functions to a designee of such official, *designee* shall mean the deputy of such official, the head of a division, or a comparable official as designated by the official to whom the direct delegation is made.

18 C.F.R. §375.301(b) (emphasis in original). Where FERC's OEP organizational chart (updated

June 4, 2018) lists the Office of the Director of OEP as consisting of a Director, Deputy Director

and Sr. Policy Advisor, an OEP Chief Certificate Branch 1 cannot be considered a "comparable

official". Moreover, where FERC's OEP organizational chart (updated June 4, 2018) lists, below

the Office of the Director of OEP, the Division of Pipeline Certificates, which consists of an Acting

Director and Deputy Director, an OEP Chief Certificate Branch 1 cannot be considered a

"comparable official" to the Director of OEP. Absent the determination that the OEP Chief

Certificate Branch 1 was subdelegated the authority to issue the Approval for Extension of Time

to Complete Project, then the Approval for Extension of Time to Complete Project is necessarily

invalid. See League of Women Voters of United States, 2017 WL 1273895 at *4, *citing* 5 U.S.C.

§ 706(2)(C) and *quoting* Am. Vanguard Corp., 803 F. Supp. 2d at 12 (noting, "the particular

official acting on behalf of the agency [was] delegated the authority to act; otherwise such agency

action is invalid.")

Furthermore, 18 C.F.R. §375.308 does not permit delegation to the Director of OEP, or the

Director's designee, to issues an Approval for Extension of Time to Complete Project on contested

applications. While 18 C.F.R. §375.308(w)(4) allows the Director of OEP, or the Director's

designee, to "take appropriate action" on "[a]pplications for extensions of time to file required

reports, data, and information and to perform other acts required at or within a specific time by

any rule, regulation, license, permit, certificate, or order by the Commission" by the plain language

of the regulation, such action must be "appropriate". In addition to the improper subdelegation to

OEP Chief Certificate Branch 1, where, as here, the Request for Certificate Extension does not

comply with the express conditions of the Order, 18 CFR 157.20(b) or 18 CFR 157.20(e), then, as

a matter of law, the Approval for Extension of Time to Complete Project cannot be an "appropriate

action" under 18 C.F.R. §375.308(w)(4).

<u>**Issue 2**</u>

The Applicant's Request for Certificate Extension filed by Chris Harvey, Manager, Rates

and Certificates for Algonquin Gas Transmission, LLC was distributed to FERC's distribution list

at 11:17 a.m. on December 26, 2018:

> **From:** 'FERC eSubscription' [mailto:eSubscription@ferc.gov]
> **Sent:** Wednesday, December 26, 2018 11:17 AM
> **Subject:** Request for Delay of Action/Extension of Time submitted in FERC CP16-9-000 by Algonquin Gas Transmission, LLC,et al.
>
> On 12/26/2018, the following Filing was submitted to the Federal Energy Regulatory Commission (FERC), Washington D.C.:
>
> Filer: Algonquin Gas Transmission, LLC
> Enbridge (U.S.) Inc. (as Agent)
>
> Docket(s): CP16-9-000
> Lead Applicant: Algonquin Gas Transmission, LLC
> Filing Type: Request for Delay of Action/Extension of Time
> Description: Algonquin Gas Transmission, LLC hereby submits a request for an extension of time under CP16-9.
>
> To view the document for this Filing, click here
> http://elibrary.FERC.gov/idmws/file_list.asp?accession_num=20181226-5024

FERC's Approval for Extension of Time to Complete Project was distributed to FERC's

distribution list at 11:51 a.m. on December 26, 2018, only 34 minutes after the Applicant's Request

for Certificate Extension was distributed to FERC's distribution list (at 11:17 a.m.):

**From:** eService@ferc.gov [mailto:eService@ferc.gov]
**Sent:** Wednesday, December 26, 2018 11:51 AM
**To:** Hayden, Michael <MHayden@morrisonmahoney.com>
**Subject:** Document Service in CP16-9-000

This notification is served on you in accordance with the requirements set forth in Section 385.2010 of the Commission's rules.

On 12/26/2018, the Federal Energy Regulatory Commission (FERC), Washington D.C., published the following issuance:

Docket(s): CP16-9-000
Description: Letter order granting Algonquin Gas Transmission, LLC's 12/26/18 request for Extension of Time to Complete Project under CP16-9.

You can view the issuance at:
http://elibrary.FERC.gov/idmws/file_list.asp?accession_num=20181226-3004

Whether FERC's Approval for Extension of Time to Complete Project was completed in 34 minutes or not, the fact that the Applicant's Request for Certificate Extension was dated December 26, 2018 necessarily means that during the same morning the Applicant's Request for Certificate Extension was received by FERC, the Applicant's Request for Certificate Extension was then conveyed from its recipient at FERC (Kimberly D. Bose, Secretary) to the OEP Division of Pipeline Certificates, which then somehow drafted the Approval for Extension of Time to Complete Project and distributed it to the FERC distribution list, all by 11:51 a.m. on the same date the Request for Certificate Extension was received (December 26, 2018). Nowhere in this timeline was the Applicant's Request for Certificate Extension "pending before the Commission for consideration" as noted by FERC Chairman, Kevin J. McIntyre as an express prerequisite for FERC to respond to Congressmen Lynch only nine months ago (*see* Exhibit 2), nor could any level of review have been completed by the Director of OEP and/or Chief, Certificate Branch 1, OEP Division of Pipeline Certificates between receipt of the Applicant's Request for Certificate Extension and the issuance of FERC's Approval for Extension of Time to Complete Project.

12

Consistent with *Rockies Express Pipeline LLC*, 128 FERC ¶61,045 (2009), and especially where FERC Chairman, Kevin J. McIntyre expressly corresponded with Congressmen Lynch on the subject of extending the time to complete the Applicant's project, FERC is required to document the level of review completed by Chief, Certificate Branch 1, OEP Division of Pipeline Certificates, including what additional staff in his division participated in such review, prior to issuing Approval for Extension of Time to Complete Project. *See Rockies Express Pipeline LLC*, *supra*.

There is also no evidence that any of the required additional procedural steps discussed in *Rockies Express Pipeline LLC*, 128 FERC ¶61,045 (2009) were undertaken prior to the issuance of the Approval for Extension of Time to Complete Project. Notwithstanding the argument that the Director of OEP should not subdelegate the authority to issue an Approval for Extension of Time to Complete Project to OEP Chief Certificate Branch 1 in response to Requests for Extension of Time arising out of the Order, there has been no evidence that the Director of OEP actually did subdelegate this authority to OEP Chief Certificate Branch 1 to issue an Approval for Extension of Time to Complete Project. If such evidence does exist, the *Rockies Express Pipeline LLC* decision specifies that such evidence should include internal documentation of the subdelegation, as well as information concerning the level of review completed by OEP Chief Certificate Branch 1, including what additional staff in his branch participated in such review. 128 FERC ¶61,045. Again, if evidence of subdelegation exists, the *Rockies Express Pipeline LLC* decision specifies such evidence should include internal documentation. Id. For example, the Order requires any request by the Applicant to modify the conditions set forth in the Order to "explain how that modification provides an equal or greater level of environmental protection than the original measure" as set forth below:

As recommended in the Environmental Assessment (EA) and modified herein, this authorization includes the following conditions:

1. The Applicants shall follow the construction procedures and mitigation measures described in its application, supplemental filings (including responses to staff data requests), and as identified in the EA, unless modified by this Order. The Applicants must:

a. request any modification to these procedures, measures, or conditions in a filing with the Secretary of the Commission (Secretary);

b. justify each modification relative to site-specific conditions;

c. explain how that modification provides an equal or greater level of environmental protection than the original measure; and

d. receive approval in writing from the Director of the Office of Energy Projects (OEP) before using that modification.

(Order, Appendix B, at 93). Here, the Request for Certificate Extension is silent as to how doubling the deadline for "Algonquin and Maritimes' completion of construction of the authorized facilities and making them available within two years from the date of this order" (Order, 89) satisfies the express condition of the Order to explain "how that modification provides an equal or greater level of environmental protection than the original measure." [Order, Appendix B, at 93(1)(c)]. Notwithstanding that the Applicant did not provide the required explanation that is a prerequisite for any extension of the express condition of the deadline for "Algonquin and Maritimes' completion of construction of the authorized facilities and making them available within two years from the date of this order" (Order, 89), it is inarguable that the Commission did not consider any explanation of how the requested extension of the two-year deadline condition "provides an equal or greater level of environmental protection than the original measure" as required under the express conditions of the Order. [Order, Appendix B, at 93(1)(c)]. The absence of any such consideration by the Commission is further underscored by the fact that the Approval for Extension of Time to Complete Project (dated December 26, 2018) was distributed to FERC's

14

distribution list only 34 minutes after the Request for Certificate Extension (dated December 26, 2018) was distributed to FERC's distribution list. There simply aren't enough minutes available in the record to account for the Commission's receipt of the Request for Certificate Extension, review of the Request for Certificate Extension, consideration of the Request for Certificate Extension (including consideration of a mandatory explanation of how the requested extension of the two-year deadline condition "provides an equal or greater level of environmental protection than the original measure"), typing out the two-page Approval for Extension of Time to Complete Project and distributing the Approval for Extension of Time to Complete Project to FERC's distribution list, all by 11:51 a.m. on the same date the Request for Certificate Extension was received. As such, the Approval for Extension of Time to Complete Project, fails to satisfy the express conditions of the Order and, therefore, fails as a matter of law. [Order, 89 and Appendix B, at 93(1)(c); League of Women Voters of United States, 2017 WL 1273895 at *4; *Rockies Express Pipeline LLC*, 128 FERC ¶61,045 (2009).

## V.    CONCLUSION

WHEREFORE, the Fore River Residents Against the Compressor Station, City of Quincy, Massachusetts, Weymouth Councilor Rebecca Haugh, Michael H. Hayden and Food & Water Watch, all intervenors in this proceeding, respectfully request rehearing and rescission of FERC's Office of Energy Projects (OEP) Approval for Extension of Time to Complete Project issued on December 26, 2018 at 11:51 a.m.

Respectfully submitted on behalf of:

FOOD & WATER WATCH,

_Adam Carlesco_ (MHH)
_____
Adam Carlesco
Attorney for Food & Water Watch
1616 P Street NW, suite 300
Washington, DC 20036
(202) 683-4925
acarlesco@fwwatch.org

Respectfully submitted on behalf of:
THE FORE RIVER RESIDENTS AGAINST
THE COMPRESSOR STATION,
CITY OF QUINCY, MASSACHUSETTS,
WEYMOUTH COUNCILOR REBECCA
HAUGH AND MICHAEL H. HAYDEN,

_____
Michael H. Hayden
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210
617-439-7541
mhayden@morrisonmahoney.com

Dated:  January 25, 2019

16

CERTIFICATE OF SERVICE

I hereby certify that, on January 25, 2019, I filed the foregoing document electronically and served said document electronically upon each person designated on the official Service List for the docket number of this proceeding as compiled by the Secretary to the Commission.

_____

Michael H. Hayden

# EXHIBIT 1

**STEPHEN F. LYNCH**
8TH DISTRICT, MASSACHUSETTS

COMMITTEE ON FINANCIAL SERVICES
SUBCOMMITTEE ON CAPITAL MARKETS AND
GOVERNMENT SPONSORED ENTERPRISES
SUBCOMMITTEE ON FINANCIAL INSTITUTIONS
AND CONSUMER CREDIT

COMMITTEE ON OVERSIGHT AND
GOVERNMENT REFORM
RANKING MEMBER, SUBCOMMITTEE ON
NATIONAL SECURITY
SUBCOMMITTEE ON GOVERNMENT OPERATIONS

ASSISTANT DEMOCRATIC WHIP

# Congress of the United States
## House of Representatives
### Washington, DC 20515-2108

2268 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
202-225-8273
202-225-3984 FAX

1 HARBOR STREET
SUITE 304
BOSTON, MA 02210
617-428-2000
617-428-2011 FAX

PLYMOUTH COUNTY REGISTRY BUILDING
155 WEST ELM STREET
SUITE 200
BROCKTON, MA 02301
508-586-5555
508-580-4692 FAX

15 HEMLOCK STREET
SUITE 16
QUINCY, MA 02169
617-287-4305
617-770-0945 FAX

LYNCH.HOUSE.GOV

January 3, 2018

Ms. Cheryl LaFleur
Chair, FERC
888 First St., NE
Washington, DC 20426

Dear Ms. LaFleur:

It is with serious concern for the public's health and safety that I write you regarding the compressor station proposed by Spectra Energy located at 3 Bridge St., Weymouth, MA. As the Congressman from the Massachusetts' Eighth District, I represent the Town of Weymouth and several municipalities which will be adversely impacted by the proposed compressor station.

The proposed location for the compressor station is a small peninsula bordered by the Fore River Basin, King's Cove and the densely populated neighborhoods of Quincy, Braintree, and North Weymouth. There are nearly one thousand homes, thirty-eight schools, a water treatment facility, and a public park located within a half mile of the proposed location. Also, an estimated three thousand one hundred children live within a mile of the proposed site, and thirteen thousand two hundred children attend school within three miles of the proposed location.

Further, recent testing conducted by Dr. Curt Nordgaard in April, 2017, revealed that the air quality in the affected area is poor. The test results showed that several carcinogens: Benzene, Methyl Chloride, Acetone, Ethanol, and Butanone are present in the air in amounts that already exceed state guidelines. By Spectra's own admission in its Air Report, the compressor will admit at least ten carcinogens into the air: Formaldehyde, Benzene, Acrolein, Naphthalene, and Propylene Oxide among them. Therefore, this compressor station will increase the level of carcinogens in the air that already violate state guidelines. If I may speak plainly, it seems reckless and absurd that this proposal is still under active consideration given these facts.

Notably, our Massachusetts' Governor, Charlie Baker, has recently directed several state agencies to conduct an air quality impact review, a public safety threat review, and a climate resilience review prior to issuing any state permits that will allow the proposal to proceed.

2018-00025

It is well documented that this proposed site will not work in Weymouth and will cause irrevocable harm to residents in the region. I respectfully request that you deny any application by Spectra Energy for an extension of the timeline to begin work on the compressor.

Thank you for considering my request.

Sincerely,

STEPHEN F. LYNCH
Congressman
8th District
Massachusetts

# EXHIBIT 2

**FEDERAL ENERGY REGULATORY COMMISSION**
WASHINGTON, DC 20426

March 21, 2018

OFFICE OF THE CHAIRMAN

The Honorable Stephen F. Lynch
U.S. House of Representatives
Washington, D.C. 20515

Dear Congressman Lynch:

Thank you for your January 3, 2018, letter regarding Algonquin Gas Transmission L.L.C.'s (Algonquin) Atlantic Bridge Project (Docket No. CP16-9-000). Your comments have been placed in the Commission's official record.

On May 2, 2016, the Commission issued for public comment an Environmental Assessment (EA) that independently evaluates the environmental impacts of the Atlantic Bridge Project, including impacts from the Weymouth Compressor Station. The EA includes a thorough evaluation of impacts on air quality, noise, aesthetics, and safety from construction and operation of the Weymouth Compressor Station. The EA recognizes that although the compressor station site is located adjacent to numerous other industrial facilities, it is also within one half mile of residences and schools.

All comments submitted to the Commission during review of the project were addressed either in the EA or in the Commission's January 25, 2017, order authorizing the project. The Commission's order, and the subsequent order denying rehearing on December 17, 2017, found that the Weymouth Compressor Station would not significantly affect air quality or safety. In addition, the Commission orders found that Algonquin's proposed Weymouth Compressor Station is designed to operate in compliance with the Clean Air Act, and that Algonquin has committed to complying with the U.S. Department of Transportation's safety siting and operation standards.

The Commission's order precludes Algonquin from beginning project construction until it has obtained all necessary federal permits. Algonquin submitted applications for federal permits to the applicable Massachusetts permitting agencies in October 2015. To date, these agencies have not acted in any way on an air permit or coastal zone consistency determination. Algonquin has not to date made any requests for an extension of time, so there is no matter pending before the Commission for consideration.

If I can be of further assistance in this or any other Commission matter, please let me know.

Sincerely,

Kevin J. McIntyre
Chairman